H. C. SALE *v.* THE BOARD OF EDUCATION OF THE COUNTY OF CABELL

Submitted June 22, 1937. Decided June 26, 1937.

*Okey P. Keadle,* for plaintiff.
*S. S. McNeer,* for defendant.

FOX, JUDGE:

The outstanding question in this suit involves the construction and application to the facts presented of a part of Section 2-a, Article 9, Chapter 8, Acts of the Legislature, First Extraordinary Session 1933, known as the County Unit Law. The section in its entirety undertakes to provide for the laying of levies by boards of education

to carry the act into effect. The particular paragraph now in question reads:

"Upon a petition of one hundred taxpayers of any political subdivision of a county to the board of education of the county of which such political subdivision is a part, the board of education shall call an election within said political subdivision for the purpose of authorizing the county board of education to lay special increased rates of levy on the property of said political subdivision, as provided by law, for educational purposes as may be set forth in the petition and in the call for the election."

Under the act quoted, the Board of Education of Cabell County proposes to hold separate elections in Gideon and Kyle magisterial districts of said county to ascertain the will of the voters as to the increase of levies for school purposes, for a term of three years. The levies proposed are within the limitations prescribed by Section 1, Article X of the Constitution, as amended. The purposes for which the levies are to be used embrace the construction of permanent improvement to school property in Gideon district, and for the increase of salaries of teachers in both Gideon and Kyle districts. The carrying out of the purposes of the board would seem to require the approval of the proposed levies in both districts, as these purposes cannot be made effective without their cooperation. The plaintiff, a citizen of Kyle district, and a property owner in both Kyle and Gideon districts, presented his bill to the Judge of the Circuit Court of Cabell County praying for an injunction against the proposed election. The injunction prayed for was refused, and the application therefor is now presented to this court.

Two preliminary questions are presented: (1) Whether the title of the act embraces the subject matter dealt with in section 2-a above quoted; and (2) whether the proposed election in the two districts is a joint election and not authorized by the statute under consideration.

As to the first question presented, we are of the opinion that the title to the act is sufficiently broad to cover the

section here in question. The act purports to amend and re-enact certain sections, repeal others, and add new sections, all stated to be for the purpose of permitting the "establishment of the county unit plan for school organization." The establishment of any plan of school organization necessarily implies that some provision be made for the expense thereof, and we do not think provisions for necessary revenues can be said to be without the scope of an act which in plain language states its purpose to be to establish a county unit system which can only be administered where revenues are provided therefor. The establishment of any system of government and provisions for the costs thereof go hand in hand. This court, in considering the county unit law, in *Leonhart* v. *Board of Education,* 114 W. Va. 9, 170 S. E. 418, held:

> "If the title of an act is broad enough to give a fair and reasonable index to all the purposes of the act, it is not necessary to descend to particulars in the title."

In the body of the opinion, great stress is laid on the language of the title in which it is stated that all of the proposed amendments, re-enactments, repeals and additions were for the purpose of "the establishment of a county unit plan for school organization." We approve of the court's reasoning, as applied to this act, and consider it binding authority on the point raised herein.

The second question is more difficult. Technically, the elections are separate and independent of each other, though to be held on the same day. The difficulty will arise, if ever, should the proposal to increase levies be approved in one district and defeated in the other. Under such a state of facts, the use of the approved levies by one district would appear to be of doubtful legality, inasmuch as the proposal contemplates the expenditure of the levies in two districts, and the cooperation of both in providing the funds therefor. In the situation as here presented, it is possible that one district may vote to approve levies for construction work in the other, and that other district

decline to assist. These are mere conjectures as to what may happen, and do not, at this time, furnish sufficient justification for a condemnation of the proposed election on that ground alone.

The more serious questions presented are: (1) Whether Section 2-a contravenes Section 1, Article X of the Constitution as amended; and (2) whether Chapter 67, Acts of the Legislature, Second Extraordinary Session, 1933, repeals said section. It is not necessary to enter into an extended discussion of the background of the amendment to Section 1, Article X of the Constitution, commonly referred to as the Tax Limitation Amendment. As is well known, that amendment provides for the classification of property and for the limitation of levies. It also provides that the levies provided for therein, as to different classifications of property, may be increased not to exceed fifty per cent of the maximum rates provided therein, nor for a longer period than three years at any one time. The language of this particular part of the amendment, in so far as it affects the question now under consideration reads:

> "And the legislature shall further provide by general law for increasing the maximum rates authorized to be fixed by the different levying bodies upon all classes of property by submitting the question to the voters of the taxing units affected, but no increase shall be effective unless at least sixty per cent of the qualified voters shall favor such increase, and such increase shall not continue for a longer period than three years at any one time, and shall never exceed by more than fifty per cent the maximum rates herein provided and prescribed by law."

It will be observed that the question of increasing levies under this provision of the Constitution can only be submitted to the voters of the taxing units affected. Section 2-a provides for such vote in "any political subdivision." A taxing unit and a political subdivision are not synonymous terms, although a taxing unit may, in some cases, cover the same territory as a political sub-

division. Legally, they are separate and distinct. Formerly, under a liberal interpretation of the term, "political subdivision", a magisterial district was both a taxing unit and a political subdivision. Under the county unit law, magisterial school districts no longer exist, except for the purpose of providing for the payment of indebtedness created prior to the enactment of that law. Such a district is therefore no longer either a taxing unit or a political subdivision except in the limited sense above noted.

This would seem to require investigation of what are taxing units under the law now in force. This question is set at rest by a reference to Section 4, Article 8, Chapter 67, Acts of the Legislature, Second Extraordinary Session 1933, which reads:

> "The taxing units of the state for the purposes of this act are declared to be (1) the state, (2) the county, for all county purposes including indebtedness other than school indebtedness, (3) present school districts for current school purposes, (4) school districts existing prior to the twenty-second day of May, one thousand nine hundred thirty-three, for school debt service purposes, (5) magisterial and other road districts for road and other debt service purposes other than county road debts, (6) other specially created taxing districts for indebtedness existing at the time of the adoption of the tax limitation amendment, (7) municipalities for municipal purposes including municipal debt service purposes."

If we give to the Constitution the meaning which its language plainly contemplates, we necessarily come to the conclusion that proposals to increase levies by a vote of the people can only be submitted to a taxing unit and that construction would seem to inhibit, so far as current expenditures of school administrations are concerned, and including expenditures for improvements, permanent and otherwise, the increase of levies other than by a vote in the taxing unit affected, which, in this case, is the County of Cabell. Magisterial school districts have

no existence except for the limited purpose of paying debts, and cannot be held to have been in the minds of the legislature in the enactment of a levy statute, where, by a former enactment, these districts were abolished as taxing units for the raising and expenditure of current revenues. We think, therefore, that when the legislature attempted to authorize the vote provided for by the Constitution, in a territory other than a legal taxing unit, it exceeded its power.

The plaintiff contends that even if the legislature had authority to enact the part of Section 2-a quoted herein, the same was repealed by the enactment, some months later, of Chapter 67 of the Acts of the Legislature, Second Extraordinary Session 1933. We do not believe the legislature had the power to enact that part of Section 2-a in question, and therefore the discussion of the matter of its repeal becomes academic, but for the fact that on a question of grave public importance, we are not disposed to overlook the point raised.

Chapter 67 is a comprehensive statute, covering the allocation of constitutional levies among the different levying units of the state. It allocates certain of those levies for debt purposes, and gives certain parts thereof to the state, counties, school districts and municipalities. It undertakes to provide in what manner the Constitution may be made effective with respect to the increase of levies for a limited period by a vote of the people. Every possible effort apparently was made to cover the entire subject, and the chapter in question expressly provides that "all existing provisions of law inconsistent with this act are hereby repealed." The act defines taxing units in such a way as to permit the application of the Constitution to such units. Reference to political subdivisions is not contained in the act except in Section 16, Article 8 thereof where, in providing for an election to increase levies, it is stated that after certain proceedings are had with relation to the amount of the increase and purposes of the same "the local levying body shall submit to the voters within their political subdivision the question of the additional levy at either

general or special election." The use of the term "political subdivision", when considered in connection with the entire act and its purposes, must be held to be limited to the taxing units specifically defined in Section 4 thereof. Giving to Section 2-a the meaning contended for by the board of education, there is a conflict between that section and Chapter 67. While as a general rule the repeal of a statute by implication is not favored, it is clearly recognized by all of the authorities that such a repeal is called for where there is substantial conflict between the two statutes being considered, and the subject matter of the first statute is fully covered by the second. We hold that Chapter 67 must control with respect to the voting of increased levies provided for in Section 1, Article X of the Constitution, as amended, and in so far as Section 2-a may have conferred upon the voters of a political subdivision the power to increase levies, where such political subdivision was not, at the same time, a taxing unit within the provisions of Chapter 67, the later act must be held to have withdrawn that power.

We think the question of uniformity of taxation should be mentioned in connection with this question. Section 3, Article 8, Chapter 67, states the purpose of the act to be "that the taxes to be assessed (referring to all levies) shall be levied and collected with uniformity coextensive with the territory of the taxing unit within which such taxes are to be levied and collected." That idea runs through the entire act and it seems to contemplate that no citizen of a taxing unit shall be required to pay taxes at a higher rate of levy, for a particular purpose, than other citizens of such unit. The effect of the proposed increase of levies in the two districts of Cabell County would be to require citizens and taxpayers of the two districts affected to pay a greater rate of levy for school purposes than the citizens and taxpayers of the other districts of that county. The burden of current maintenance and administration of the school system of Cabell County is a charge upon the entire body of the county, and of the taxing unit which is co-extensive with the boundaries of that county. We do not see how it is

possible, under the general provisions of equality and uniformity with respect to taxation which runs through our entire legal system, to justify the imposition of a burden upon a particular part of a taxing unit not imposed upon the unit as a whole. It may be said that if a majority of the taxpayers of Gideon and Kyle districts desire to burden themselves in order to obtain certain advantages which will result therefrom, they have the right to do so, notwithstanding the fact that the burden of school maintenance is a county charge and that ownership of any property purchased or improved would be vested in the board of education which represents the entire county. A sufficient answer to this is that a majority does not have the right to impose upon a minority a burden which the law inhibits. The Constitution, and laws enacted thereunder, are frequently invoked as a necessary restraint on a majority and for the protection of minorities. The majority does not usually invoke the law to carry out its purposes, except to give the forms of legality thereto.

The injunction prayed for is awarded.

*Injunction awarded.*