E .C. LEONHART *et al. v.* THE BOARD OF EDUCATION, CHARLESTON INDEPENDENT SCHOOL DISTRICT, *et al.*

(No. 7684)

Submitted July 26, 1933.   Decided August 3, 1933.
(Rehearing denied September 5, 1933)

*Howard B. Lee* and *R. A. Blessing,* for appellants.

*W. H. Petry, amicus curiæ,* for J. E. Scarbro and others.

*Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for State Superintendent of Schools.

*Lively, Lively & Stambaugh,* for appellee Board of Education.

WOODS, JUDGE:

Plaintiffs, citizens and taxpayers of the City of Charleston, County of Kanawha, seek to enjoin the board of education of Charleston Independent School District from surrendering to the newly created board of education of the said county the control and management of the schools and the school properties of said independent school district. From a decree of the circuit court of said county denying injunctive relief, the plaintiffs have appealed.

The suit is predicated upon the alleged unconstitutionality of an Act of the Extraordinary Session of the Legislature of West Virginia, 1933 (Senate Bill No. 3), abolishing magisterial school districts and sub-districts and independent school districts, and creating a county unit plan of school organization. There are five bases of attack.

The sufficiency of the title of the Act is challenged. Article 6, Section 30 of the Constitution of West Virginia provides: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title." The title of the Act in question reads: "An act to amend and re-enact sections one and three, article one; to repeal section four, article one; * * * to add section two-(a) to article nine * * *, chapter eighteen of the Code of West Virginia, one thousand nine hundred thirty-one, relating to the organization of the school system so as to permit the establishment of the county unit plan of school organization."

It is urged that the title of the Act is not sufficiently broad to comprehend paragraph (b) of section one and section three, article one, which purport to abolish the magisterial school districts and the independent school districts of the state; that although the title of the Act clearly indicates that one of the purposes of the Act is to establish a county unit system of public schools, the title does not disclose that the Act purports to abolish the magisterial and independent school districts.

Sections of a statute may be amended, re-enacted or abolished by a legislative act whereof the title makes reference to the affected sections by number only. *Roby v. Sheppard*, 42 W. Va. 286, 290, 26 S. E. 278. The only limitation in such particular is that the amendment of a section designated in the title by number only must not inject new matter. *Bedford Corporation v. Price*, 112 W. Va. 674, 166 S .E. 380. In the title of the Act under consideration, a few sections of the then existing statute are designated by number as abolished by the new Act. This is sound legislative procedure. Also, numerous sections of the old statute are enumerated in the title of said Act as thereby amended and re-enacted. This, too, is in compliance with the said constitutional requirement and is sound, except in so far as said re-enacted sections introduce new matter into the statute; and, as to such new matter, namely, a county unit system, the last lines of the title of the Act (quoted above) are fully informative.

In *Bedford Corporation v. Price, supra,* we held unconstitutional and void that portion of section 7, chapter 12, Acts of the Legislature, Extraordinary Session 1932, which provides

for the semi-annual payment of municipal taxes, because the title of the act made no reference to municipal taxes, and the sections of the old statute, enumerated in the title of the act as being amended and re-enacted, contained nothing with reference to municipal taxes. An examination by legislator or citizen of the old statutory sections designated in the title of the Act there involved would not have given the slightest information or suggestion that the legislature was proposing to make drastic changes in the law with reference to the collection of municipal taxes. Therefore, the municipal taxes portion of the Act was held unconstitutional. The legislature there attempted to accomplish a result which was not indicated either directly or indirectly by the title of the Act.

The situation in respect of the legislation involved in the suit at bar is vastly different. The declared purpose of the Act, as stated in the title, is the "organization of the school system so as to permit the establishment of the county unit plan of school organization." That paramount fact was impressed by the title upon the mind of legislator or citizen interested in the Act or affected thereby. True, the title of the Act does not disclose what kind of a county unit system was intended, but, in the absence of an exception stated in the title the words import a unit system operating to the exclusion of lesser units. The object of the Act is the establishing of a county unit school system. That is clear from the title, and the title also makes it clear that various sections of the old statute were being either repealed or amended and re-enacted. for the purpose of accomplishing the primary purpose stated. It was not necessary for the details, incidents or auxiliary elements to be recited or enumerated in the title. "If the title of an act is broad enough to give a fair and reasonable index to all the purposes of the act, it is not necessary to descend to particulars in the title." *State ex rel. Hallanan v. Thompson*, 80 W. Va. 698, 93 S. E. 810. The contents of an act need not be detailed in its title. *Brozka v. County Court*, 111 W. Va. 191, 160 S. E. 914. "If under the one object expressed in the title other incidental or auxiliary objects appear in the act germane to the principal object, the act is valid as to such incidental, auxiliary and germane objects. The universal rule of

construction is that the title should be construed in its most comprehensive and liberal sense favorable to the validity of any provision of the act." *State v. Haskins,* 92 W. Va. 632, 115 S. E. 720, 722. It is only where it is very clear that a provision of the act is not within the title, liberally construed, that such provision of the act should be held invalid. All of these considerations convince us that we would not be warranted in declaring any portion of the county unit act unconstitutional because not sufficiently designated in the title of the Act.

The next two grounds of attack, to which we shall direct our attention, involve the interpretation of section 10, Article XII of our Constitution, which reads: "No independent free school district or organization shall hereafter be created, except with the consent of the school district or districts out of which the same is to be created, expressed by a majority of the voters voting on the question." Appellants contend (1) that "organization" is modified by "free school", thus making any change in existing districts—magisterial or otherwise —subject to a vote of the people immediately concerned; and (2) that, in any event, the approval of the people affected being specifically required in the creation of an "independent free school district", such a district cannot be abolished except in like manner. In other words, the position is taken that the Act contravenes said section 10, in attempting to effect a change without first submitting the question to a vote in the various districts.

In *Ogden v. Saunders,* 12 Wheat. 213, 332, 6 L. Ed. 606, Chief Justice Marshall declared the following as a rule of interpretation, having then under consideration the Federal Constitution: "To say that the intention of the instrument must prevail; that this intention must be collected from its words; that its words are to be understood in the sense in which they are generally used by those for whom the instrument was intended; that its provisions are neither to be restricted into insignificance, nor extended to objects not comprehended in them, nor contemplated by its framers, is to repeat what has already been said more at large, and is all that can be necessary." That which the words declare is the meaning of the

instrument; and neither the courts nor the legislature have the right to take away from that meaning.

In regard to the meaning of the word "organization", as used in the section under consideration, we are of opinion that it is modified by the words, "independent free school" just as "district" is so modified by them. This is the natural construction of the sentence when standing alone; and, in view of the broad powers conferred upon the legislature by our constitution, we would not be warranted in giving it any other construction tending to limit such powers.

But does the inhibition in regard to the creation of an independent free school district carry with it a like inhibition against the abolition of such a district once created? If it does the people have a right to speak before an independent school district may be abolished, or destroyed. Before we can decide this question we must ascertain the purpose of the provision. Section 1, Article XII, provides: "The legislature shall provide, by general law, for a thorough and efficient system of free schools." It has plenary power in this respect, except for specified inhibitions interdicted by the constitution itself. As stated in *Road Commission v. County Court*, 112 W. Va. 98, 101, 163 S. E. 815, 816: "The general powers of the legislature are almost plenary as it can legislate on every subject not foreclosed by the constitution itself. 'The test of legislative power is constitutional restriction; what the people have not said in their organic law their representatives shall not do, they may do.' "

In view of the broad powers enjoyed by the legislature in the absence of constitutional restrictions, as well as the specific provision of section 1 of the article on education, that body has the right to make change in the educational system as it may see fit, subject, of course, to constitutional limitations. The school districts as defined at the time of the adoption of our constitution were retained (Section 6, Article XII, Const.), subject, however, to legislative control. They formed merely a basis upon which to start. The framers of the constitution recognized the propriety of special districts in populous centers, but thought it best to curb the legislature in the creation of them, unless the people immediately concerned

should give their consent thereto. This was a limitation and therefore must be so construed so as not to divest the legislature of the broad powers conferred upon it. While the power to create in section 1 carries with it the power to destroy and re-create, the prohibition necessarily must be construed as attaching to the creation, and not to the abolition of an independent district. School districts are mere governmental sub-divisions of the state, which, subject to constitutional limitation, may be created, amended, consolidated or abolished at the will of the legislature. *Herold v. McQueen,* 71 W. Va. 43, 75 S. E. 313; *Board* v. *Board,* 30 W. Va. 424, 4 S. E. 640.

A fourth point is made that section 2-a, article 9 of the Act (Senate Bill No. 3) is unconstitutional in that it authorizes the new county board to lay a school levy without first submitting the levy to a vote of the people as it is contended is required by section 5, Article XII of our constitution. The pertinent portion of this section reads: "* * * It [the legislature] shall also provide for raising in each county or district, by the authority of the people thereof, such a proportion of the amount required for the support of free schools therein as shall be prescribed by general laws." It is apparent that the legislature took the view that previous approvals of a school levy by every school district within the state was a compliance with the constitutional provision. This may not have been the construction which would have appealed primarily to us. But the legislative exposition of this provision is entitled to so much weight that it should not be rejected unless "manifestly erroneous". *Road Commission* v. *County Court, supra,* 107, 163 S. E. 815. There is nothing in the constitution which even hints that "the authority of the people" for raising a school levy shall be obtained every time there is a change in the levying unit. In voting for a school levy it is obvious that the people of any unit recognized that the levy would be laid and expended by the school board of that unit, and that this recognition influenced the vote to a certain degree. But can it be said with force that any unit would not have authorized the levy at all if the people thereof had contemplated a change in the school unit? To so hold would be to place the thought of the unit above the thought of the schools with the people and we cannot do so. The provision

for the education of the children was undoubtedly the paramount thought of the people in authorizing school levies. And while it might have been more orderly to have re-submitted to the people the levy under this radical change of units, and, unquestionably, such submission would have removed all constitutional questions, yet we cannot say the course of the legislature is manifestly wrong. We can merely doubt its construction and "to doubt only is to affirm," as was declared by this court of another constitutional question in *Ex parte McNeely*, 36 W. Va. 84, 95, 14 S. E. 436, 439. See also *Road Commission v. County Court, supra,* pp. 103-4.

In determining the question as to the constitutionality of an act of the legislature, we must remember that the legislature is an independent part of our government. It is presumed to have had the constitution in mind when passing the Act. It is the exponent of the popular will, and its acts must be treated with respect, reconciled and sustained if possible. A court is never justified in setting at naught the will of the legislature, unless it is clearly repugnant to the constitution. The rule laid down in *Fletcher v. Peck*, 6 Cranch, 87, 3 L. Ed. 162, is sound and salutary: "The question, whether a law be void for its repugnancy to the constitution is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case." Of course, this court has said: "With the wisdom or propriety of the act, we have nothing to do. Those are matters for the legislature alone to consider; it determines the public policy. Our jurisdiction ends when we have determined the legislative power to exist. If the legislature has made a mistake, it is a political one, and it alone can correct it." *Booten v. Pinson,* 77 W. Va. 412, 428, 89 S. E. 985, 992. So, the wisdom or expediency of legislation is not a question for the courts.

Discussion of the fifth, and last, proposition put forward by appellants—that of taking property without due process of law, and impairing the obligations of contracts—in view of our construction of section 10, Article XII, becomes unnecessary. The property now held by the independent board goes into the

hands of the new board. Whether the latter acts properly in regard thereto is not now before us.

For the reasons stated, we must affirm the action of the chancellor.

*Affirmed.*