BOARD OF EDUCATION OF THE COUNTY OF RALEIGH *v.* COMMERCIAL CASUALTY INSURANCE COMPANY

(No. 8203)

Submitted October 8, 1935. Decided October 15, 1935.

LITZ, JUDGE, dissenting.

*Steptoe & Johnson, Stanley C. Morris* and *W. Ervin Miller,* for plaintiff in error.

*Ben H. Ashworth, W. A. Thornhill, Jr.,* and *David G. Lilly, Jr.,* for defendant in error.

MAXWELL, JUDGE:

The Commercial Casualty Insurance Company of Newark, New Jersey, was awarded writ of error to a judgment against it in favor of the Board of Education of the County of Raleigh, in the circuit court of said county, for $708.85, with interest and costs. The action is for the amount of the premium paid to the defendant by plaintiff's predecessor, the Board of Education of the District of Slab Fork, for a certain public liability and property damage policy of insurance for the term of one year beginning August 27, 1932. Under legislative enactment, the district board was succeeded by the county board (plaintiff) May 22, 1933. This action was instituted at January Rules, 1934.

The policy is in respect of six school buses operated by the district board for the convenience of school children within the district.

The basic inquiry is whether under West Virginia statutes which were in existence at the time of the purchase of this insurance a district board of education had authority to spend money for such purpose. The plaintiff denies that there was such authority; the defendant affirms.

Under the Code of 1931, a district board of education was vested with "general control and management of all the schools and the school interests of its district * * *." Further, a board had authority "to provide at public expense for the transportation of pupils to and from such consolidated schools, or other schools where transportation of pupils may be necessary." Code, 18-5-13. Can it be reasonably said that the said statute, by implication, created the right in a district board

to purchase indemnity insurance by reason of its operation of school buses?

Because it is a public agency, an arm of the state, a school board is not liable for damages for personal injury, even though such injury may arise from neglect or non-feasance. *Krutili* v. *Board of Education*, 99 W. Va. 466, 129 S. E. 486. Nor can a board of education by the acquisition of indemnity insurance, or otherwise, change its status as a governmental agency. *Boice* v. *Board of Education*, 111 W. Va. 95, 160 S. E. 566. It is therefore asserted on behalf of the plaintiff that inasmuch as the district board could not have been held liable for damages occasioned by the negligent operation of a school bus, there was nothing against which the policy of indemnification could operate; that it was without basis or justification. The defendant counters this position by urging that though there would be no primary liability of the board and therefore no basis for indemnification on that score, there are other elements of the policy which were of value to both the board and the public, namely, (1) to enable passengers and the public to enforce the personal liability of bus drivers for negligence; (2) to pay the expense of litigation and all costs taxed against the insured; (3) to investigate at the insurer's cost any accident to which the policy applies; (4) to defend any suit even if groundless; (5) to reimburse the assured for any surgical relief imperative at the time of an accident.

We are of opinion that under the law as it stood in 1932, when this insurance was purchased, there was no implied authority in a district board to procure insurance to facilitate the enforcement of bus drivers' liability. Since the date of the arising of this controversy, the statute has been enlarged. At present, a county board of education may ''provide at public expense for insurance against the negligence of the drivers of school buses operated by the board.'' Acts 1935, ch. 60, amending Code, 18-5-13. It seems evident that the passage of this Act was in pursuance of legislative recognition that no such authority theretofore existed, and was not a mere crystallization of an existing authority arising from implication of law.

We are impressed that though the several services (items [2] to [5], *supra*) may have been undertaken by the insurer, they were of merely secondary importance. Even if they were matters as to which the district board might purchase insurance, they would not have justified the substantial premium paid for the policy. Primarily, the purpose of the policy was to indemnify the district board against legal liability which might be adjudged against it on account of the negligent operation of its school buses. The other items were incidental. It was only on the basis of said primary underwriting that the substantial premium could be justified. Since, however, there was no legal liability on that theory, and none could arise, the supposed justification for the charge made and paid—the *quid pro quo*—was non-existent.

We are dealing with a governmental agency of limited and circumscribed jurisdiction and authority. The scope of that authority is alone reflected in the statutes dealing with the subject. A function not expressly authorized can be justified only if it comes within clear and plain implications of the statute. *Jarrett* v. *Goodall*, 113 W. Va. 478, 168 S. E. 763. Such implications, we are of opinion, do not arise in connection with a situation such as is here presented.

The defendant further urges that if the contract of the district board with the insurance company for the purchase of the policy aforesaid is considered by the court to have been *ultra vires*, nevertheless, the plaintiff can not recover because the contract has become executed. Much authority is cited in support of the general rule that where an *ultra vires* contract has been fully performed on both sides, neither party can recover of the other on the basis of the contract. *Washington* v. *Burnett*, 4 W. Va. 84, 95; 14A Corpus Juris, p. 319; 7 Fletcher's Cyc. of Corporations, p. 652. The authorities also hold that such inhibition applies to public and quasi public corporations as well as to private ones. 2 Black on Rescission and Cancellation (2nd Ed.), pp. 889 *et seq*. Whatever may be the general rule, the right of the plaintiff at bar to prosecute the instant action is governed by statute whereunto alone we must look for the plaintiff's right and duty in the premises. Code 1931, 11-8-13, provides: "Any indebtedness created,

contract made or order or draft issued in violation hereof, shall be void and of no effect, and any money received thereon may be recovered from the person receiving the same by the fiscal body which created, made or issued the indebtedness, contract, order or draft.'' In *County Court* v. *Carpenter,* 115 W. Va. 51, 174 S. E. 568, we held that under said statutory provision ''the legislative intent is manifest that there should be recovery of any money unlawfully paid out by a county court or other fiscal body.'' The statutory language applies equally and with like effect to boards of education. In this action, therefore, the plaintiff comes with the background of the statutory mandate. The present (later) statute vivifies this obligation of recapture of public funds improperly expended. Acts 1933, 2nd Ex. Session, chap. 67, sec. 28. Code, Supp. 1934, 11-8-28.

The defense urges that in no event should the plaintiff be permitted to recover an amount in excess of the difference between the premium payment by the district board and the ''out of pocket'' expenses of the defendant in connection with the policy in question. The items were pleaded and proved. They are: commission to local agent; state and federal taxes on premium collected; accounting and adjusting services extending through the year that the policy was in force; and attorneys' fees and expenses incident with this litigation.

There having been no warrant of authority on the part of the district board to purchase insurance to indemnify itself on account of the operation of school buses, nor to insure against the negligence of bus drivers, the benefits, if any, which remained were, in comparison with the major matter, mere shadows, wholly inadequate to support the defendant's claim for expenses of issuing and servicing the policy. It is a general rule that attorneys' fees incurred in litigation must be paid by the party contracting such obligations. There seems to be no substantial reason why this case should be deemed a departure from that general rule.

The judgment of the trial court is affirmed.

*Affirmed.*