STATE *ex rel.* AMOS B. GREEN

*v.*

BOARD OF EDUCATION OF BRAXTON COUNTY, WEST VIRGINIA, *et al.*

(No. 10207)

Submitted January 31, 1950. Decided March 7, 1950.

GIVEN, JUDGE, dissenting.

*G. C. Belknap, J. J. Jones,* for petitioner.

*John H. Fox, Cary C. Hines,* for defendants.

RILEY, JUDGE:

In this original proceeding in mandamus the relator, Amos Green, seeks to require the Board of Education of Braxton County, West Virginia, and J. Lee Simmons, its president, Velma Eakle, J. N. Reip, O. N. Singleton, and Raymond Thayer, its members, to pay to him the sum of two thousand twenty-nine dollars, in accordance with an authorization and direction of the Legislature, Chapter 138, Acts of the Legislature, 1949, effective July 1, 1949. The purpose of the Act was to reimburse relator for personal injuries brought about by the negligence of the board of education. Under Section 2 of the Act it is declared to be the finding of the Legislature that such reimbursement is necessary to discharge a moral obligation of the board of education.

This proceeding was submitted to this Court on relator's petition, the answer of the board of education, and the

affidavits of relator, Amos Green; Carlin Pierson, superintendent of maintenance of the board of education at the time relator was injured; Ray Uldrich and Kenneth Ocheltree, fellow-workers of relator; and Roy B. Cartwright, superintendent of schools of Braxton County.

From the pleadings and affidavits it appears that relator on March 4, 1948, while employed as a carpenter by the board of education in the construction of a bridge across Little Kanawha River in Braxton County, was injured by a fall from the top of the bridge to the bed of the river as a result of the breaking of a cable, which was defective, and which defective condition of the cable the relator charges the board of education, by the exercise of reasonable care and diligence, should have known, and did know; and that by reason of the negligence of the board of education in not furnishing relator with a reasonably safe place to work and not having the cables of the bridge, defective because of age, inspected and kept in good repair, one of the cables broke and the bridge fell with relator a distance of about twenty feet. From the affidavits it readily appears that the bridge was unsafe and dangerous because of the old and defective cable; that whatever inspection was made by representatives of the board of education, it was so superficial that the defect in the cable, which may have been latent, was not discovered; and it further appears that no tests had been made of the cables on the bridge.

In addition this record discloses that relator was painfully and permanently injured, so that he has been unable to do any kind of work from the time of the injury to the present time, and has necessarily expended large sums of money for hospital and medical care in his endeavor to be cured.

On August 2, 1949, the board of education, by a formal order, which was unanimously adopted, refused to pay to relator the claimed sum of two thousand twenty-nine dollars, as it was authorized and directed to do by the Act of the Legislature hereinabove referred to.

In a number of cases this Court has considered the effect of a declaration by the Legislature of the existence of a moral obligation of the State. *Woodall v. Darst,* 71 W. Va. 350, 77 S. E. 264, 44 L. R. A. (N. S.) 83, Anno. Cas. 1914 B, 1278; *Glover v. Sims,* 121 W. Va. 407, 3 S. E. 2d 612; *State ex rel. Cashman v. Sims,* 130 W. Va. 430, 43 S. E. 2d 805; *State ex rel. Adkins v. Sims,* 130 W. Va. 645, 46 S. E. 2d 81. And where a doubt exists whether the purpose of an appropriation is public or private, it will be resolved in favor of the appropriation. *State ex rel. Davis Trust Co., Admr. v. Sims,* 130 W. Va. 623, 629, 46 S. E. 2d 90. Generally, it is well settled that a valid appropriation may be made in discharge of a mere moral obligation. *United States v. Realty Co.,* 163 U. S. 427, 41 L. ed. 215, 16 S. Ct. 1120; *Commonwealth v. Ferries Co.,* 128 Va. 827, 92 S. E. 804; and *State ex rel. Davis Trust Co., Admr. v. Sims, supra.*

So we are of opinion to accept the finding of the Legislature that a moral obligation existed, based as it is on the factual background set forth in the preamble to the Act, to the effect that on March 4, 1948, relator Green was working as a carpenter for the board of education on a bridge at Falls Mill in Braxton County; that while so employed, due to the negligence of the board of education, a cable of the bridge broke, violently hurling relator into the Little Kanawha River, whereby he suffered multiple severe injuries and, as a result thereof, incurred expenses for medical treatment and hospital services; and further that relator was in no sense at fault in the premises. The recitals contained in the preamble of the Act set forth such a state of facts that if the board of education had not been engaged in a governmental function, and therefore had not been immune from an action at law, an action would lie at relator's instance against the board to recover damages for his alleged injuries.

Thus, this case comes within the rule in *State ex rel. Cashman v. Sims,* 130 W. Va. 430, 442, 43 S. E. 2d 805, which involved the question whether in that case the State had a moral obligation to compensate relator therein, a

private person, to the effect that a moral obligation exists where there is "an obligation or a duty, legal or equitable, not imposed by statute but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons." The obligation being moral only does not justify an action at law against the board of education, because the board of education was engaged in a governmental function in maintaining and repairing the bridge.

We do not have before us the question in the *Cashman* and other cases, arising under Section 35 of Article VI of the Constitution of West Virginia that: "The State of West Virginia shall never be made defendant in any court of law or equity." The immunity of the board of education against suits or actions is not by virtue of any constitutional provision, but because it was engaged in a governmental function. Clearly, the Legislature could have by general law made all boards of education liable to their employees for negligence just as it provided in Chapter 40, Article X, Section 17, Acts of the Legislature, First Extraordinary Session, 1933, formerly Code, 17-9-33, for the absolute liability (1) of county courts to keep bridges and approaches under their control, and (2) of municipalities to keep streets, bridges, alleys and sidewalks under their control, in repair. See generally, *Bradfield* v. *Board of Education of Pleasants County*, 128 W. Va. 228, 36 S. E. 2d 512; *Webster* v. *Board of Education of Raleigh County*, 116 W. Va. 395, 180 S. E. 438; *Boice* v. *Board of Education of Rock Dist.*, 111 W. Va. 95, 160 S. E. 566; *Krutili* v. *Board of Education of Butler Dist.*, 99 W. Va. 466, 129 S. E. 486.

As Chapter 138, Acts of the Legislature, 1949, is not a general act, the question arises whether under Section 39, Article VI of the Constitution of West Virginia, which provides: "The Legislature shall not pass local or special laws * * * Regulating or changing county or district affairs," the statute is unconstitutional. Undoubtedly, the statute is a special or local statute within the meaning of said Section 39 of Article VI of our Constitution, and to the extent that the statute directs the Board of Education of

Braxton County to reimburse relator, the Legislature, in our opinion, is regulating the fiscal affairs of the board. If such regulation should be held valid in this case, the instant appropriation would be a stepping stone toward legislative direction of the fiscal affairs of boards of education and other governmental agencies of the State. We therefore are of opinion that the Act, in so far as it directs the board to make the payment, is *pro tanto* unconstitutional; but, in so far as the Act authorizes the board as in its discretion it may see fit, to reimburse relator, the Act is constitutional; and the board under the authority of the Act may reimburse relator, but is not bound to do so.

We therefore refuse the writ prayed for.

*Writ refused.*

GIVEN, JUDGE, dissenting:

I agree that the Act of the Legislature is constitutional as construed by the majority of the Court, "in so far as it authorizes the board, as in its discretion it may see fit, to pay to the employee the amount designated * * * ;" but I cannot bring myself to the view of the majority in holding the Act unconstitutional "in so far as the Act purports to direct and require the board to make such payment." I would award the writ as prayed for.

It is said that the Act is "special" within the meaning of the provisions of Section 39 of Article VI of the Constitution. That section prohibits the Legislature from enacting "special laws" in eighteen different classes or subjects of legislation, each listed and specifically defined. If the present Act falls within any of such subjects it is the one defined as "Regulating or changing county or district affairs; * * *."

Does the Act regulate the affairs of the county or district? I am of the opinion that it does not, for the reason that the board of education is not a county or a district, and for the further reason that the Act does not regulate the affairs of the board of education.

A board of education is a corporation, created by the Legislature, Code, 18-5-5, as amended. *Bradford* v. *Board of Education of Pleasants County,* 128 W. Va. 228, 36 S. E. 2d 512. It has only such powers as are vested in it by the Legislature. Constitution, Article XII, Section 1. "* * * School districts are mere governmental subdivisions of the state, which, subject to constitutional limitations, may be *created, amended, consolidated* or *abolished* at the will of the legislature." *Leonhart* v. *Board of Education,* 114 W. Va. 9, page 15, 170 S. E. 418. (Emphasis supplied.) The fact that its jurisdiction extends throughout the county does not make its affairs county or district affairs. It necessarily follows that it cannot be a county or a district within the meaning of Section 39.

Neither can I believe that the Act regulates the affairs of the board. It merely directs the payment of the sum found to be morally owing the petitioner because of the negligence of employees of the board. It does not purport to regulate affairs. Can there be any material difference in directing and requiring payment of such a moral obligation as here, where the moral obligation arose out of the negligence of an employee of a governmental corporation, and where the moral obligation arose out of the negligent actions of employees of the State Road Commissioner, for illustration? This Court has on numerous occasions awarded mandamus requiring payment of sums appropriated for satisfying moral obligation arising out of negligence of governmental employees. See *State ex rel. Carton* v. *Sims,* 133 W. Va. 543, 57 S. E. (2d) 465, decided at this term, and *Davis Trust Company, Administrator* v. *Sims,* 130 W. Va. 623, 46 S. E. 2d 90.

Is this a special act within the meaning of Section 39? I can see no difference in the act here and the numerous acts passed by the Legislature making appropriations for payment of moral obligations found to be owing certain individuals and, as before stated, this Court has required payment of such appropriations in all cases where it was convinced of the existence of a moral obligation. *Davis*

*Trust Company, Administrator* v. *Sims, supra.* Acts are not special within the meaning of Section 39 merely because they are not of uniform application. *Dillon* v. *County Court,* 60 W. Va. 339, 55 S. E. 382. I cannot see force in the argument that an act merely directing payment of an obligation is an act regulating affairs of a board of education. Why say an act is special when it commands, yet general when it merely authorizes?

The majority fears that if the regulation were to be held valid the "instant appropriation would be a stepping stone toward legislative direction of the fiscal affairs of boards of education and other governmental agencies of the State." I have no such fear. The present appropriation is proof to me that the Legislature has carefully considered the interests of the State, in that it has allowed the petitioner only the sum of $2,029.00 where, in all probability, had there been available to the petitioner a legal remedy, the recovery would have been for a much larger sum, for it is not denied that the injuries of petitioner were very severe and that he expended large sums of money in an effort to rehabilitate himself. Is not the Legislature protecting the interests of the State in considering such claims individually, rather than by general laws subjecting the boards of education to large expenses and harassment in defending many actions at law? At least this would seem to be a policy for Legislative determination.

In determining whether an act of the Legislature is constitutional courts will apply the act to the particular facts of the case in order to determine whether the act is valid. *State* v. *Peel Splint Coal Co.,* 36 W. Va. 802, 15 S. E. 1000, 17 L. R. A. 385. The constitutionality of an act is presumed, and any doubt as to its constitutionality should be resolved in favor of its validity. *Road Commission* v. *County Court,* 112 W. Va. 98, 163 S. E. 815; 11 Am. Jur., Constitutional Law, Section 128. An act is not unconstitutional merely because it does not have state wide application. *Casto* v. *High School Board,* 94 W. Va. 513, 119 S. E. 470. "Courts will not hold an act of the legislature to be

contrary to the Constitution without great caution and unless it be manifestly and beyond doubt unconstitutional." *South Morgantown* v. *Morgantown,* 49 W. Va. 729 (Syllabus, Point 3), 40 S. E. 15.

Being forced to the above conclusions I must necessarily, but respectfully, dissent.