244 S.E.2d 799 (1978)
Frances Alice BOGGS, an infant, etc., et al.
v.
The BOARD OF EDUCATION OF CLAY COUNTY, West Virginia, et al.
No. 13824.
Supreme Court of Appeals of West Virginia.
April 7, 1978.
Dissenting Opinion May 16, 1978.
*800 DiTrapano, Mitchell, Lawson & Field, Robert W. Lawson, III, Charleston, for appellants.
Wayne King, Clay, for appellees.
NEELY, Justice:
This appeal requires us to reexamine the doctrine of governmental immunity as it relates to county commissions and county boards of education. The case arises from an accident in which an infant child fell from a footbridge while traveling to school in Clay County. The infant, Frances Alice Boggs, and her father, Dennis S. Boggs, as next friend, filed suit in the Circuit Court of Clay County against the County Court of Clay County[1] and the Board of Education of Clay County, both of which governmental bodies, it was alleged, maintained control of the footbridge. The circuit court dismissed the complaint, with prejudice, on the basis of the doctrine of governmental immunity asserted by the defendants. We affirm the circuit court's ruling that the Board of Education is immune from suit, but we reverse the ruling that the County Court of Clay County enjoys the same immunity.
*801 On October 30, 1973 Frances Alice Boggs was seven years old and a second grade pupil at Bomont Elementary School in Clay County. On that day Frances boarded a county school bus in front of her home. She and other pupils were later discharged from the bus on State Secondary Road 1 at a point which required them to walk across a wooden footbridge to reach the school building. Apparently, the school bus could have driven closer to the school building by crossing a vehicular traffic bridge but did not do so that day.
While walking across the footbridge, Frances stepped on a broken board and fell into the creek below. As a result of the fall, Frances suffered injuries including a broken left arm, a bruised kidney, and bruises and contusions over much of her body.
The complaint alleged that the infant plaintiff's injuries were caused by the negligence of the defendants, the County Court of Clay County and the Board of Education of Clay County, in failing to keep the bridge in repair and allowing its use by school children without sufficient warning or protective devices. The infant plaintiff sought damages for personal injury, and her father sought special damages for medical expenses and the loss of his daughter's probable earnings during her minority. On October 23, 1975 the defendants asserted the doctrine of governmental immunity by filing a motion to dismiss the complaint for failure to state a claim. As noted above, the circuit court granted this motion and dismissed the complaint with prejudice.

I
The appellants rely on W.Va.Code, 17-10-17 [1969] to establish that the county court is subject to suit arising from the bridge accident.[2]Code, 17-10-17 [1969] states that:
Any person who sustains an injury to his person or property by reason of any road or bridge under the control of the county court . . . being out of repair due to the negligence of the county court. . . may recover all damages sustained by him by reason of such injury in an action against the county court . .
With respect to matters within the scope of this statute the Legislature has clearly limited the county court's right to raise the shield of governmental immunity, and we hold that the statute applies in the case before us to make the county court susceptible to suit.
Our application of Code, 17-10-17 [1969] depends on its constitutionality, a question we must squarely face. If the source of the county court's governmental immunity is in the common law, then the Legislature would certainly be entitled to limit that immunity as it sees fit. If the source is W.Va.Const., art. 6, § 35, however, then the Legislature's statutory limitation of governmental immunity would be unconstitutional.
The language of W.Va.Const., art. 6, § 35 is simple[3] but determining the proper extent of its applicability is indeed complicated. Given a multitude of governmental objectives, and the seemingly limitless number of agencies and instrumentalities created to accomplish them, it would be futile to establish rigid criteria governing the application of constitutional sovereign immunity to all conceivable situations. Stating definite standards for entitlement to such immunity would easily dispose of the instant case, but might create more problems than it would solve. The better approach is to undertake a functional analysis of recent well-reasoned immunity cases in an effort *802 to extract some principles which can help resolve the case before us. In this regard we turn to the cases of Hope Natural Gas Co. v. West Virginia Turnpike Commission, 143 W.Va. 913, 105 S.E.2d 630 (1958); City of Morgantown v. Ducker, 153 W.Va. 121, 168 S.E.2d 298 (1969); and Woodford v. Glenville State College Hous. Corp., W.Va., 225 S.E.2d 671 (1976).
Dependency upon the State, while not designated as controlling, is one important factor which has consistently been used to evaluate whether a particular governmental body may invoke the constitutional immunity of the State. The proper inquiry is "Is it the State or the alter ego of the State?" Hope Natural Gas v. West Virginia Turnpike Commission, 143 W.Va. 913 at 926, 105 S.E.2d 630 at 638 (1958). In cases where an instrumentality of government has successfully invoked constitutional immunity there has been, almost uniformly, a large degree of dependence by the instrumentality upon the State coffers for its establishment, maintenance, and operation. The elements of dependency include reliance upon the Legislature for financial support, compulsion to pay funds received into the State treasury, retention of title to property in the State's name, and reliance on a State source for the payment of debts. An examination of the sources of county revenues and the manner of county government operation reveals that none of these elements applies to county courts.
The basic funds for the operation of county courts are not appropriated by the Legislature, which must adhere to the limitations of W.Va.Const., art. 10, § 6 forbidding the State to pledge its credit for the benefit of counties. The primary source of monies for county court operation is the county's proportional share of the property tax. The property tax, while imposed by legislative action, is administered and distributed on a purely local level.
Although it is true that the Legislature appropriates some funds for counties, all such appropriations are founded upon W.Va.Const., art. 10, § 6a which is the exception and not the rule.[4] Provision of necessary matching funds to federal grants, permitted under W.Va.Const., art. 10, § 6a, is a practical way to give West Virginia citizens the benefit of numerous federal programs; it is not intended to open the door for the State to become primarily responsible for county finances. Mere receipt of categorical funds from the State treasury under W.Va.Const., art. 10, § 6a does not establish dependency of a large degree.
Other factors also indicate that county courts are not governmental bodies entitled to share in the State's constitutionally imposed sovereign immunity. County funds are not deposited in the State treasury but are entirely administered on a county level. The property of the county is its own. State action is not required for the expenditure of county funds or the disposition of county property.
Our analysis indicates that county courts are fundamentally independent of the State, and accordingly, for purposes of W.Va.Const. art. 6, § 35 immunity, county courts cannot be considered arms of the State. Since the governmental immunity of county courts is not of constitutional dimension, W.Va.Code, 17-10-17 [1969] is constitutional and legitimately subjects county courts to liability for claims within the scope of the statute. This can hardly be regarded as a radical departure from existing law, as this Court, without addressing the issue of constitutionality, has consistently upheld the application of W.Va.Code, 17-10-17 [1969] and its predecessors to county courts (now county commissions). Cunningham v. County Court of Wood County, 148 W.Va. 303, 134 S.E.2d 725 (1964); Petros v. Kellas, 146 W.Va. 619, 122 S.E.2d 177 (1961); Clayton v. County Court of Roane County, 96 W.Va. 333, 123 S.E. 189 (1924); Parsons v. County Court of Roane County, 92 W.Va. 490, 115 S.E. 473 *803 (1922); Watkins v. County Court, 30 W.Va. 657, 5 S.E. 654 (1888). These cases implicitly recognize that county court governmental immunity is founded only in the common law and therefore is subject to statutory limitation.
Since we have held that Code, 17-10-17 [1969] is constitutional, that statute will prevent the county court in this case from asserting the bar of governmental immunity against the appellants' claim. It is, therefore, unnecessary to address the appellants' contention that the logic used to abrogate municipalities' common law governmental immunity in Long v. City of Weirton, W.Va., 214 S.E.2d 832 (1975) should be extended to counties as well.

II
We move now to consider the defense of governmental immunity raised by the Clay County Board of Education. In view of the overriding importance of W.Va.Const., art. 6, § 35, we feel it is appropriate to examine that constitutional provision first in our analysis of county board of education immunity. For a starting point we cite the following dictum from State ex rel. Green v. Board of Education of Braxton County, 133 W.Va. 750 at 754, 58 S.E.2d 279 at 281-282 (1950):
We do not have before us the question. . . arising under Section 35 of Article VI of the Constitution of West Virginia that: "The State of West Virginia shall never be made defendant in any court of law or equity." The immunity of the board of education against suits or actions is not by virtue of any constitutional provision, but because it was engaged in a governmental function. Clearly, the Legislature could have by general law made all boards of education liable to their employees for negligence just as it provided in Chapter 40, Article X, Section 17, Acts of the Legislature, First Extraordinary Session, 1933, formerly Code, 17-9-33, for the absolute liability (1) of county courts to keep bridges and approaches under their control, and (2) of municipalities to keep streets, bridges, alleys and sidewalks under their control, in repair. See generally, Bradfield v. Board of Education of Pleasants County, 128 W.Va. 228, 36 S.E.2d 512 [1945]; Webster v. Board of Education of Raleigh County, 116 W.Va. 395, 180 S.E. 438 [1935]; Boice v. Board of Education of Rock Dist., 111 W.Va. 95, 160 S.E. 566 [1931]; Krutili v. Board of Education of Butler Dist. 99 W.Va. 466, 129 S.E. 486 [1925].
Although this statement, by its own terms, is dictum, we must confront it directly, because it presumes with some fair degree of certainty and authority to answer the question whether county boards of education may invoke W.Va.Const., art. 6, § 35 as protection against suit.
By stating that the Legislature could withdraw the shield of immunity from boards of education, the Green court clearly implied that the immunity was not founded in W.Va.Const., art. 6, § 35. No other interpretation of the Green language is possible in view of the well-settled law that ". . . the Legislature is without capacity to pass a law affecting the constitutional immunity from suit of the state or one of its governmental agencies." Stewart v. State Road Commission of West Virginia, 117 W.Va. 352 at 355, 185 S.E. 567 at 568 (1936). See also City of Morgantown v. Ducker, 153 W.Va. 121 at 130, 168 S.E.2d 298 at 303 (1969): "[T]he constitutional immunity of the State of West Virginia from suit by Article VI, Section 35 of the Constitution of this State can not be waived by the Legislature . . ."
It is regrettable that the Green court did not expound further on its dictum, because we are now left to accept or reject a critically important statement of the law without having the opportunity to examine its underlying rationale. Nor are the cases cited by the Green court in support of its dictum at all helpful in understanding why county boards of education are thought to be outside the scope of W.Va.Const., art. 6, § 35. Not one of these cases mentions the constitutional provision we are examining, and all of them proceed on the assumption *804 that the Legislature is free to alter, limit, or otherwise modify the governmental immunity of county boards of education.
Two other pertinent cases shed no more light on the source of board of education immunity than the four cases cited in the Green excerpt, supra. See Utz v. Board of Education of Brooke County, 126 W.Va. 823, 30 S.E.2d 342 (1944) and Board of Education of County of Raleigh v. Commercial Casualty Ins. Co., 116 W.Va. 503, 182 S.E. 87 (1935). These six cases, plus Green itself, develop the doctrine of board of education immunity as far as it goes in West Virginia, and after reading them all, we are in no better position than when we started to answer the key question concerning the source of the immunity. We are hampered by the lack of cogent analysis and by the fact that only tentative conclusions can be drawn from existing precedent. The following passage in Ward v. County Court of Raleigh County, 141 W.Va. 730 at 736, 93 S.E.2d 44 at 47 (1956), discussing five of the leading board of education cases,[5] demonstrates the uncertainty in the law which we must attempt to resolve:
In each of these cases there seems to be a holding, or a clear implication, to the effect that a board of education, though a governmental agency, will be subject to an action where a legislative act attempts to create such liability . . . It must be kept in mind that the constitutional provisions relating to the immunity of the State, and its agencies, cannot be waived by the Legislature. That immunity is absolute. [Emphasis added.]
Again, as in Green, the Court demonstrates its awareness of the constitutional immunity provision, but does not explain why boards of education are apparently outside its scope.
Having found more questions than answers in the precedent, we do not hesitate now to use relevant functional criteria as the basis for developing our own analysis of the constitutional immunity doctrine. The case of Woodford v. Glenville State College Hous. Corp., W.Va., 225 S.E.2d 671 (1976), involving an agency with a quasi-educational purpose, gives us a good working statement of the relevant criteria for determining if county boards of education are immune from suit by virtue of W.Va.Const., art. 6, § 35. The first criterion is whether boards of education were created or granted authority to perform any function on behalf of the State by specific enactment of the Legislature. The Legislature's responsibility with respect to public education is succinctly stated in W.Va.Const., art. 12, § 1: "The legislature shall provide, by general law, for a thorough and efficient system of free schools." In discharging this responsibility, the Legislature has enacted W.Va.Code, 18-1-1 [1967] et seq. providing for a comprehensive, state-wide system of public education, which is cooperatively administered on the state and county levels. These code and constitutional provisions relating to education leave no doubt that county boards of education are performing functions on behalf of the State itself, not merely on behalf of the various localities within the State.
The second Woodford criterion for evaluating governmental immunity is whether the Legislature appropriates funds for the operation of the governmental body claiming the benefit of the constitutional immunity provision. Again, as above, the county boards of education meet the criterion. The bulk of annual state appropriations for public schools are provided to county boards of education under the state basic foundation program, W.Va.Code, 18-9A-1 [1971] et seq. This code article provides a comprehensive plan for state financial support of public schools, State ex rel. Raese v. Battle, 149 W.Va. 761, 143 S.E.2d 328 (1965), and it includes allowances for professional educators, *805 other school personnel, fixed charges, transportation, administrative costs, and other current expenses. Also, various other code sections in chapter 18 provide state educational appropriations in such areas as teacher retirement, vocational education, and the construction, renovation, remodeling and equipping of school buildings. The scheme of state financing of public schools makes it abundantly clear that the Legislature appropriates funds for the operation of county boards of education. It is also clear that county boards of education rely on State monies to pay their debts, thereby satisfying another Woodford criterion.
Not only are county boards of education dependent to a large degree on State fiscal support, but they are also subject to extensive State control exerted by the West Virginia Board of Education and the State Superintendent. W.Va.Const., art. 12, § 2; W.Va.Code, 18-2-1 [1971], et seq; W.Va. Code, 18-3-1 [1970] et seq. Such matters as the selection of textbooks, teacher preparation and accreditation, personnel policies, extracurricular activities, school attendance policies, minimum standards for the issuance of diplomas, school extension work, and curriculum development, to name a few, are all responsibilities vested in the State Board of Education and Superintendent, and their rules, regulations, and mandates in these regards must be carried out by county boards of education. It hardly would seem equitable to deny county boards of education the protection of W.Va.Const., art. 6, § 35, when much of what they do either stems directly from, or is in furtherance of, policies imposed on them by the State Board of Education, an arm of the State clearly entitled to the protection of W.Va.Const., art. 6, § 35.
On balance we are persuaded that the County Board of Education of Clay County is entitled to assert the sovereign immunity of the State, W.Va.Const., art. 6, § 35, in bar of the action filed against it by the appellants in this case. Therefore, we affirm the ruling of the trial court below with respect to the Board of Education. The ruling of the trial court with respect to the governmental immunity of the Clay County Court, however, is reversed, and the case is remanded for further proceedings consistent with this opinion.
Affirmed in part; reversed in part; remanded for further proceedings.
MILLER, Justice, with whom Justice HARSHBARGER joins, dissenting:
I dissent from that portion of the opinion which provides that a county board of education now enjoys constitutional immunity against tort actions under Article VI, Section 35 of the West Virginia Constitution. As the majority notes, this is contrary to what was stated by this Court in State ex rel. Green v. Board of Education, 133 W.Va. 750, 754, 58 S.E.2d 279, 281-282 (1950):
"We do not have before us the question. . . arising under Section 35 of Article VI of the Constitution of West Virginia that: `The State of West Virginia shall never be made defendant in any court of law or equity.' The immunity of the board of education against suits or actions is not by virtue of any constitutional provision, but because it was engaged in a governmental function. . ."
Furthermore, in all of our prior cases dealing with the immunity of county boards of education, the underlying rationale was that they enjoyed a common law governmental immunity. In none of those cases was there any holding that they fell within the immunity granted by our Constitution to the State. Bradfield v. Board of Education, 128 W.Va. 228, 36 S.E.2d 512 (1945); Utz v. Board of Education, 126 W.Va. 823, 30 S.E.2d 342 (1944); Board of Education v. Commercial Casualty Insurance Co., 116 W.Va. 503, 182 S.E. 87 (1935); Boice v. Board of Education, 111 W.Va. 95, 160 S.E. 566 (1931); Krutili v. Board of Education, 99 W.Va. 466, 129 S.E. 486 (1925).
The basis of the majority holding that constitutional immunity under Article VI, Section 35 is applicable rests upon a "functional analysis" arising out of the case of Woodford v. Glenville State College Housing Corp., W.Va., 225 S.E.2d 671 (1976), *806 which involved a suit to recover materials and labor supplied to a non-profit corporation which had built faculty and student housing at the State college. This Court held that the suit could be maintained since the corporation was not created by any act of the Legislature, and that the funds for its operation were not dependent on appropriations made by the Legislature.
Woodford relied heavily on City of Morgantown v. Ducker, 153 W.Va. 121, 127, 168 S.E.2d 298, 302 (1969), where it was stated, in determining whether Article VI, Section 35 was applicable, the test was whether the board or commission was created to handle functions of the State:
"This Court has held in numerous cases that proceedings against boards and commissions, created by the Legislature as agencies of the State, are suits against the State within the meaning of Article VI, Section 35 of the Constitution of West Virginia, even though the State is not named as a party in such proceeding."
The cases construing Article VI, Section 35 of our Constitution have generally looked to see if the particular governmental agency was performing some direct State function on a State-wide basis. Hesse v. State Soil Conservation Committee, 153 W.Va. 111, 168 S.E.2d 293 (1969); Hope Natural Gas Co. v. West Virginia Turnpike Commission, 143 W.Va. 913, 105 S.E.2d 630 (1958).
Paradoxically, the majority concludes that county courts do not enjoy the constitutional immunity under Article VI, Section 35, and yet I believe that from any "functional analysis" standpoint, county courts and county boards of education occupy the same type of subordinate governmental function. In the 1872 Constitution, under Article VIII, Section 22, et seq., provisions were made for the establishment of the county system of government. Further provisions as to certain other county officers were set out in Article IX, Section 1, et seq., of that Constitution.
The same general administrative provisions were carried over in the Judicial Reorganization Amendment adopted in November, 1974. As to the counties, the amendment removed from Article VIII the county administration provisions and placed them in Article IX. It is obvious that these constitutional provisions provided the general framework for the county organization and empowered the Legislature to grant additional governmental powers to the county commissions, which are the local governmental agencies for the counties.
This has been done in a variety of legislative enactments. Thus, we find a host of additional powers granted to the county commissions and county officers in W.Va. Code, 7-1-1, et seq. Indeed, under W.Va. Code, Chapter 8, there are a number of articles dealing with the right of municipalities and counties to combine their services and in effect integrate their governmental affairs in order to provide economy in operation at the local governmental level.
As to the fiscal affairs of the county, I disagree with the statement of the majority that Article X, Section 6a of the Constitution of West Virginia controls the appropriations that can be made by the Legislature to the counties. This particular provision, which was adopted at the General Election in November, 1972, and designated as the "Federal Grants and County Municipalities Aid Amendment" obviously was designed to permit counties and municipalities to receive State funds in the enumerated instances contained in that section without having the funding attacked under Article X, Section 6 that the funds were a pledge of the credit of the State. See State ex rel. Kanawha County Building Commission v. Paterno, W.Va., 233 S.E.2d 332 (1977).
I believe the Legislature does have the power to extend certain taxing powers to the county commission pursuant to the provisions of Article IX, Section 12 of the Constitution, as amended 1974, which section is a counterpart to that formerly contained in Article VIII, Section 24 under the language as follows:
"They shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of *807 their counties . . ." [Emphasis supplied]
It is by virtue of this provision that the Legislature permitted the county excise tax on the transfer of real property, found in W.Va.Code, 11-22-2. The Legislature has, of course, provided for a variety of taxing powers to municipalities. See, e. g., W.Va. Code, 8-13-1, et seq.
From a fiscal standpoint both counties and municipalities depend on the Legislature for funds. The same is true of county boards of education. The fact that they receive the right to obtain funds from legislative enactments of the State does not convert them into a State agency.
The majority reads Article XII, Section 2 of the West Virginia Constitution, as the key provisions which give State status to local school boards. This interpretation ignores the historical fact that the Legislature exercised its plenary power over education in favor of a large measure of local control in the county boards of education. Mason County Board of Education v. State Superintendent of Schools, W.Va., 234 S.E.2d 321 (1977); Leonhart v. Board of Education, 114 W.Va. 9, 170 S.E. 418 (1933); W.Va.Code, 18-5-1, et seq.
This Court has historically viewed county courts, municipalities and county boards of education as subordinate governmental agencies possessing limited powers consisting of those either expressly granted by the Constitution or Legislature or those necessarily implied by virtue of some express grant. This Court has not extended the constitutional protection of Article VI, Section 35 to county courts, municipalities or county boards of education. This is made clear from the fact that the Court has also recognized that such subordinate governmental entities can be sued in tort where they are exercising a proprietary, as distinguished from a governmental, function. See e. g., Cunningham v. County Court, 148 W.Va. 303, 134 S.E.2d 725 (1964); Petros v. Kellas, 146 W.Va. 619, 122 S.E.2d 177 (1961); Ward v. County Court, 141 W.Va. 730, 93 S.E.2d 44 (1956).
Obviously, if the absolute immunity granted to the State by virtue of Article VI, Section 35, was available to these subordinate governmental entities, then the foregoing cases and the many cases cited therein would have applied it, and there would be no necessity of formulating the distinction between governmental-proprietary operations.
Furthermore, as the majority does correctly recognize, the Legislature could not have constitutionally enacted W.Va.Code, 17-10-17, affixing liability on the county and municipalities for injuries resulting from roads or bridges being out of repair, if counties and municipalities were within the State's immunity under Article VI, Section 35. This is by virtue of our holding that the Legislature cannot waive the constitutional immunity. City of Morgantown v. Ducker, supra. I believe that any attempt to make a distinction between the subordinate governmental functions played by the county commissions, municipalities and county boards of education is meaningless and ignores our prior cases.
The correct question before this Court in regard to the liability of a county board of education is whether the common law doctrine of sovereign immunity precludes a suit against the county board of education. The common law doctrine of sovereign immunity was never thoroughly analyzed by this Court until the case of Long v. City of Weirton, W.Va., 214 S.E.2d 832, 851-859 (1975). There, Chief Justice Haden, writing for a unanimous Court, traced the origins of the doctrine which extended the concept of sovereign immunity to a subordinate governmental entity to the case of Russell v. Men of Devon, 2 T.R. 667, 100 Eng.Rpts. 359 (1788).
He went on to point out that the effect of this case had been largely undercut by the subsequent case of The Mayor and Burgesses v. Lyme Regis v. Henley, 3 B & AD 77, 110 Eng.Rpts. 29 (1832), aff'd House of Lords 2 Cl. & F. 331, 6 Eng.Rpts. 1180 (1834). It was this Court's conclusion in Long that the doctrine of sovereign immunity as to a subordinate governmental unit *808 was not a part of the English common law at the time of the adoption of our constitutional provision, Article VIII, Section 21, now Article VIII, Section 13, and as provided for in W.Va.Code, 2-1-1, which sections provide for incorporation into our jurisprudence such parts of the common law that were in effect when the State was formed, unless subsequently altered or repealed by the Legislature. The leading case of Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 163 N.E.2d 89 (1959), cert. denied, 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1960), abolishing governmental immunity for school boards, demonstrates this governmental immunity arises from the same common law historical source which was disposed of in Long.
I would, therefore, hold a county board of education is not cloaked with State immunity under Article VI, Section 35 of our Constitution, and that, in view of the Long case, its right to governmental immunity does not exist.
HARSHBARGER, Justice, dissenting:
I agree with my brother Miller's dissent completely. I add only that the involvement of local governmental entities in activities outside the courthouse, town hall and schoolroom  activities never by any person imagined when common law governmental immunities doctrines were formulated  makes the doctrines anachronistic.
We now see school buses, ambulances, bookmobiles and other governmental vehicles on the highways. We see agents of local governments inspecting restaurants, water systems, health facilities, buildings, families.
All sorts of useful local governmental activities involve work in the community, where agents pose risks to the population of negligent behavior just as great as those the rest of us represent.
I perceive no countervailing interest to government of sufficient importance to make its minions immune to suit by those who, when injured, are made just as lame as if injured by any other corporate or private person.
And, if it were not for the Constitution, I would say the same for the State immunity.
NOTES
[1] The County Court of Clay County was named as one of the parties defendant in this action. At the time of the accident giving rise to this action that was the proper denotation of the county governing body. On November 5, 1974, the voters of West Virginia ratified an amendment to add art. 9, § 9 to the West Virginia Constitution, changing the title of "County Court" to "County Commission." For convenience in this opinion the county governing body will be referred to as the County Court.
[2] It remains to be established whether the County Court of Clay County or the Board of Education of Clay County or both controlled the bridge involved in this case or were otherwise responsible for the accident.
[3] W.Va.Const., art. 6, § 35 provides:

The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employer thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.
[4] For example, see W.Va.Code, 11-13-21(b) [1976] which provides for legislative apportionment of the Coal Severance Tax to county governments. This section makes such apportionment expressly an enactment under W.Va. Const., art. 10, § 6a.
[5] The five cases are:

Bradfield v. Board of Education of Pleasants County, 128 W.Va. 228, 36 S.E.2d 512 (1945); Utz v. Board of Education of Brooke County, 126 W.Va. 823, 30 S.E.2d 342 (1944); Board of Education of County of Raleigh v. Commercial Casualty Ins. Co., 116 W.Va. 503, 182 S.E. 87 (1935); Boice v. Board of Education of Rock Dist., 111 W.Va. 95, 160 S.E. 566 (1931); Krutili v. Board of Education of Butler Dist., 99 W.Va. 466, 129 S.E. 486 (1925).