298 S.E.2d 103

**Rachel GOODEN**

v.

**COUNTY COMMISSION OF WEBSTER COUNTY.**

No. CC933.

Supreme Court of Appeals of West Virginia.

Nov. 18, 1982.

Timothy R. Ruckman, Callaghan & Callaghan, Richwood, for plaintiff.

Linda Nelson Garrett, Pros. Atty., Webster Springs, for defendant.

Ernest V. Morton, Jr., Webster Springs, amicus curiae.

HARSHBARGER, Justice:

This case is properly before the Court upon a certified question from the Circuit Court of Webster County, asking us to decide whether a county commission can be held liable in a tort action for personal injuries caused by negligence of its employees. The circuit court in denying the county commission's motion to dismiss ruled that county commissions no longer have common-law governmental immunity. We affirm that decision.

Rachel Gooden brought this civil action alleging that she sustained personal injuries on March 21, 1980, when she stumbled and fell over a cinderblock negligently placed in a public corridor of the Webster County Courthouse. The operation and maintenance of a county courthouse is a purely governmental function. W.Va. Code, 7–3–2 provides:

"The county commission of every county, at the expense of the county, shall provide at the county seat thereof a suitable courthouse ... together with suitable offices for the judge of the circuit court and judges of courts of limited jurisdiction, clerks of circuit courts, courts of limited jurisdiction and of the county commission, assessor, sheriff, prosecuting attorney, county superintendent of schools, and surveyor, and all other offices as are or may be required by law: ... The county commission shall keep the courthouse, jail and other offices in constant and adequate repair,

and supplied with the necessary heat, light, furniture, record books, and janitor service, and, except as to the office for the judge of the circuit court, with the necessary stationery and postage, and other things as shall be necessary ...."

In *Petros v. Kellas*, 146 W.Va. 619, 633, 122 S.E.2d 177, 185 (1961), the Court held that: "There is no statute which subjects such county court [now county commission] to liability for personal injuries caused by its negligence while engaged in the discharge of the duties imposed by Section 2 ...."

County commissions have enjoyed only a limited immunity for many years. Traditionally, they, and boards of education, and municipalities were liable for acts of negligence occurring in performance of proprietary functions. *Ward v. County Court*, 141 W.Va. 730, 738–39, 93 S.E.2d 44, 48–49 (1956). In addition, county commissions have long been held liable for breach of contract when the contract was within the authority of contracting officers and was otherwise valid under general principles of contract law. *E.g., Adkins v. Wayne County Court*, 94 W.Va. 460, 119 S.E. 284 (1923); *Corns-Thomas Engineering & Construction v. McDowell County Court*, 92 W.Va. 368, 115 S.E. 462 (1922); 5A M.J. *Counties* §§ 60, 61 (1976).

■ In *Boggs v. Board of Education*, 161 W.Va. 471, 244 S.E.2d 799 (1978), we held that county commissions are not entitled to the constitutional immunity bestowed by Article 6, Section 35 of the West Virginia Constitution. The first syllabus point states:

"County commissions (formerly county courts) are not instrumentalities of the State of West Virginia such as to bring them within the constitutional immunity from suit of *W.Va. Const.*, art. 6, § 35."

Because county commissions lacked constitutional immunity, the *Boggs* court upheld the constitutionality of W.Va.Code, 17–10–17 (1969), that permits a county commission to be sued when its failure to keep a road or bridge repaired causes personal injury.

■ Traditionally, county governments were considered political subdivisions of the state created for public convenience in the administration of state government, while cities were private, municipal corporations created by individuals for private advantage. *See, Watkins v. County Court*, 30 W.Va. 657, 5 S.E. 654 (1888).

*Boggs* changed this perspective of county government, and clearly removed the major underpinning for tort immunity for county governments.

The incipient demise of common-law immunity for local governmental units began even before *Boggs*. *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975), abolished municipal government immunity from tort liability, and clearly foreshadowed our decision today. The importance of *Long* is its rationale for abrogating municipal tort immunity. We found that the common-law distinction between governmental and proprietary functions was unworkable and created uncertainty, and observed that the duties and responsibilities of all forms of government have vastly expanded, thereby increasing risks of injury to the general public from negligent actions or omissions of government agents and servants.

*Long* also relied on cases from numerous jurisdictions abrogating this antiquated doctrine. The continuing viability of tort immunity for county government, however, was not addressed but it was recognized that county government immunity represents "an analogous and similar but different body of law in this jurisdiction." *Id.*, 158 W.Va. at 786, 214 S.E.2d, at 860. *Boggs* eliminated any meaningful difference between municipal and county government for immunity purposes.

We recently reiterated the reasoning of *Long* in *Ohio Valley Contractors v. Board of Education*, 170 W.Va. 240, 293 S.E.2d 437 (1982), and abolished common-law immunity for local school boards. Additionally, we noted that "[t]here is little to recommend governmental immunity" and that "[m]any commentators regard immunity to be responsible for irresponsible sovereigns and contrary to our fundamental American jurisprudential tenet that there should be a

right for every wrong." We also wrote that there is support for the proposition that "abolition of governmental immunity may have positive redistributive and allocative effects" and that "costs rising from abolished immunity are modest and that no governments have been ruined by its absence." (Citations omitted.) *Id.*, 170 W.Va. at 244, 293 S.E.2d, at 440–41.

Most scholars and students of government have urged abolition of local government immunity. In our view the various justifications advanced to support immunity, almost all of them economic, are not sufficient in reason to perpetuate the social injustice of requiring citizens injured by their government to bear costs, which in fairness and justice, should be borne by the responsible governmental entity.

County commissions are now expressly authorized by law to purchase public liability insurance, thus protecting the county and its officers, agents, and employees from financial losses because of negligent performance of official duties. W.Va.Code, 7–5–19 [1981].[1] Where liability insurance is present, the reasons for immunity completely disappear. We take the legislature's action in authorizing expenditure of public funds to purchase liability insurance to be a recognition that payment of liability claims is a legitimate part of the cost of performing public functions.[2]

Accordingly, those of our cases that have recognized common-law governmental immunity for county commissions are overruled. A county commission shall be liable, just as a private citizen, to members of the general public, for injuries proximately caused by negligence of its employees performing their duties.

Affirmed.

---

1. Prior to that time, county commissions had no express or implied statutory authority to purchase liability insurance covering governmental activities. Op. Att'y Gen., Nov. 13, 1974. By virtue of W.Va.Code, 6–12–1 [1975], county commissions, however, were expressly authorized to expend public funds to protect against risks created by the performance of proprietary functions. W.Va.Code, 6–12–3 provides that Article 12 is not to be construed to authorize a right of action where none had heretofore existed. When the Legislature explicitly authorized the purchase of public liability insurance in 1981 by enacting W.Va.Code, 7–5–19, it included no such injunction.

2. In Syllabus Point 5 of *Cunningham v. County Court,* 148 W.Va. 303, 134 S.E.2d 725 (1964), a county court's immunity from tort liability was held not affected by the fact that it purchased an insurance policy purporting to protect it against liability. In our view, the acquisition of liability insurance by a county commission eliminates an important rationale for the existence of tort immunity. The contrary holding in *Cunningham* may have been largely influenced by the fact that the acquisition of such insurance by the county court constituted an *ultra vires* act and thus provided only illusory protection for the county government.

*See* Notes 5 & 6 of *Ohio Valley Contractors, supra;* J. Dooley, *Modern Tort Law,* §§ 20.03.50, 20.04 (1982).