STATE *Ex Rel.* RICHARD A. RAESE *et al.*

*v.*

G. THOMAS BATTLE, STATE TAX COMMISSIONER, *Etc.*

(No. 12458)

Submitted June 9, 1965.            Decided July 13, 1965.

*Haden & Haden, Charles H. Haden, II,* for relators.

*C. Donald Robertson,* Attorney General, *Jack M. McCarty,* Assistant Attorney General, for respondent.

CALHOUN, JUDGE:

The petitioners in this original proceeding in mandamus, Richard A. Raese, Mary Jo Prickett, Robert Hartley, Barbara Pavlovic, Don H. Blount, Mary M. Davis and William S. Leyhe, residents, citizens and taxpayers of Monongalia County and parents of pupils in the public schools of that county, seek to require Honorable G. Thomas Battle, state tax commissioner, to perform certain acts which are alleged to be mandatorily required of him in his official capacity by Article 9A of Chapter 18 of Code, 1931, as amended by Chapter 58, Acts of the Legislature, Regular Session, 1963, which will be referred to hereafter in this opinion merely as Article 9A. An answer to the mandamus petition was filed in behalf of the state tax commissioner, but no substantial factual dispute is presented by the pleadings. A summary of the pertinent statutory provisions is essential in order to define the issues involved and the questions presented for decision.

Article 9A provides a comprehensive plan for financial support of public schools throughout the state. It requires

that the state tax commissioner shall make or cause to be made an appraisal in each county of all nonutility real estate and personal property at its true and actual value as a basis for levy of *ad valorem* taxes. After an appraisal is completed in a county, it is required that it shall be made available to the county assessor and to the county court, in its capacity as a board of review and equalization. The appraisal program was completed in Monongalia County for use in the assessment year which began July 1, 1963.

Article 9A further provides that the appraisal program throughout the state shall be completed prior to July 1, 1966. Thereafter the county assessor and the board of review and equalization in each county shall, for tax assessment purposes, fix the value of property at not less than 50% nor more than 100% of its true and actual value according to the appraisals of values made under the direction of the state tax commissioner. For the tax years preceding July 1, 1966, if assessment valuations are not made equal to 50% of the appraised values in any county, the state tax commissioner may authorize an assessed valuation in each class of property of less than 50% of the appraised valuation and shall increase the assessed valuation of each class of property each year, as nearly as practicable in equal steps, so that, in the third assessment year after the appraised valuations are delivered, the assessment valuations in each class of property shall be not less than 50% nor more than 100% of the appraised valuation.

Pursuant to the provisions of Section 4 of Article 9A, the state tax commissioner, for the tax assessment year which commenced July 1, 1964, authorized minimum assessments in Monongalia County in the four classes of property as follows: Class I, 50%; Class II, 47%; Class III, 45%; and Class IV, 45%. The assessments made by the county assessor equaled or exceeded the minimums authorized by the state tax commissioner in all of the four classes except Class II, in which class assessments were 45.7% rather than the minimum of 47% authorized by the state tax commissioner. The county court, sitting as a board of review and equalization, met and adjourned without having raised assessments

in Class II to the minimum of 47% authorized by the state tax commissioner. The assessments thus made were approved by the state tax commissioner by a communication dated April 15, 1965.

Section 4 of Article 9A provides that if "the total assessed valuation of a county shall fail to meet the minimum requirements," the county court of the county shall allocate for such year to the county board of education from the tax levies allowed to the county court a sufficient portion of its levies to equal the difference between the taxes actually levied and the amount of taxes which would have been levied had tax assessments been made pursuant to the minimum valuations provided for by the statute. The language of the statute in this respect is not entirely clear. However, the petitioners allege that if Class II assessments had been made on the basis of 47% rather than 45.7%, the county board of education would have received an additional sum of $4,551.00 in tax revenue. The county board of education made a formal demand to the county court for payment of that sum but the county court refused to comply with that demand. Because assessments in Classes I, III and IV equaled or exceeded the minimums ordered by the state tax commissioner, the county board of education will receive $8,957 more than if assessments had been made in technical compliance with minimums required for all of the four classes of property.

The prayer of the mandamus petition appears to be: (1) That the state tax commissioner review the valuations of property for tax purposes in Monongalia County for the tax assessment year which began July 1, 1964, and make such corrections as may be necessary, particularly in relation to Class II; and (2) that the state tax commissioner "exact the statutory penalty" against the county court and require that body to transfer the sum of $4,551 to the county board of education.

A portion of Section 4 of Article 9A is as follows: "Whenever in any year a county assessor and/or county court shall fail or refuse to comply with the provisions of this section in setting the valuations of property for assessment

purposes in any class or classes of property in the county, the state tax commissioner shall review the valuations for assessment purposes made by the county assessor and the county court and shall direct the county assessor and county court to make such corrections in the valuations as may be necessary so that they shall comply with the requirements of chapter eleven and of this section and the tax commissioner shall enter the county and fix the assessments at the required ratios. Refusal of the assessor and/or county court to make such corrections shall constitute grounds for removal from office." The legislature failed to specify how the state tax commissioner may proceed to carry out the duties imposed upon him by the language quoted immediately above. The Court has no power or authority to supply a procedure in this respect merely because the legislature has failed to make provision therefor. *Luther* v. *McClaren*, 87 W. Va. 133, 104 S. E. 294; *State ex rel. Myers* v. *Garner*, 148 W. Va. 92, 133 S. E. 2d 82.

Code, 1931, 11-3-24, as amended, provides that each county court shall sit annually as a board of review and equalization not later than the first day of February and that it shall not remain in session for a longer period than twenty-eight days. Adequate provisions are made in the statute for notice to owners of property which may be increased in value for tax purposes by the board of review and equalization. While Section 4 of Article 9A provides that, upon failure of the county assessors and the county courts properly to perform duties imposed upon them, "the tax commissioner shall enter the county and fix the assessments at the required ratios," the legislature has failed to specify how the tax commissioner may perform such duties after the board of review and equalization has met and adjourned or how he may raise valuations of property for tax purposes without statutory provision for notice to the property owners. The mandamus petition was filed in the office of the clerk of this Court on April 27, 1965. The case was argued before the Court on June 8, 1965. Apparently it is conceded in behalf of the petitioners that the tax commissioner cannot in this proceeding be required to raise the valuations of Class II property for the assessment year which commenced

July 1, 1964, and therefore that the prayer of the petition in this particular must be denied.

As has been stated previously, the petitioners in this mandamus proceeding seek to require the state tax commissioner to require the county court to pay the sum of $4,551 to the county board of education. Section 4 of Article 9A contains the following provision: "In the event the county court shall fail or refuse to make the reallocation of levies as provided for herein, the county board of education, the tax commissioner, the state board of school finance, or any other interested party shall have the right to enforce the same by writ of mandamus in any court of competent jurisdiction." The county board of education has refused to institute a mandamus proceeding to require the county court to make any reallocation of funds to the county board of education. While the statutory language quoted immediately above gives to the state tax commissioner the right to require the county court to make reallocation as therein provided, it does not place upon him a mandatory duty to do so. We are not aware of any other statute which places such a duty upon him. Code, 1931, 11-1-2, as amended, places numerous duties upon the state tax commissioner, but basically the duties thereby imposed relate to assessments, levies and collection of taxes. Under the statute, the state tax commissioner is charged with the responsibility of requiring proper performance of the duties relating to taxation which are imposed by law on assessors, sheriffs and boards of review and equalization. In refusing to make the reallocation of $4,551 to the county board of education, the county court in this case is acting in its capacity as a county court rather than in its capacity as a board of review and equalization.

It is well settled that mandamus lies to require a public official to perform a nondiscretionary legal duty. *State ex rel. Smith* v. *Kelly,* 149 W. Va. 381, 141 S. E. 2d 142. One seeking relief by mandamus must show a clear legal right to the relief sought and also a corresponding legal duty to perform on the part of the one against whom relief is sought. *State ex rel. Sams* v. *Ohio Valley General Hospital Associ-*

*ation,* 149 W. Va. 229, 140 S. E. 2d 457, 463; *State ex rel. Zagula* v. *Grossi,* 149 W. Va. 11, pt. 4 syl., 138 S. E. 2d 356; *State ex rel. Bronaugh* v. *The City of Parkersburg,* 148 W. Va. 568, 136 S. E. 2d 783, 785-86; *State ex rel. Public Service Commission* v. *Southern West Virginia Oil & Gas Corporation et al.,* 141 W. Va. 551, 558, 91 S. E. 2d 737, 740; *State ex rel. Bumgardner* v. *Mills et al.,* 132 W. Va. 580, pt. 2 syl., 53 S. E. 2d 416; *Brumfield et al.* v. *Board of Education of Logan County,* 121 W. Va. 725, pt. 1 syl., 6 S. E. 2d 238. Section 4 of Article 9A confers upon the state tax commissioner a right to institute a proceeding in mandamus against a county court to require reallocation of funds to a county board of education in proper circumstances, but no mandatory or nondiscretionary duty in that respect is imposed upon him. He cannot be compelled by mandamus to exercise that right.

For reasons stated, the writ of mandamus as prayed for is refused.

*Writer refused.*