369 S.E.2d 454 (1988)
The WEST VIRGINIA EDUCATION ASSOCIATION, etc.; Thomas J. Vogel, as President of the WVEA, and as a Citizen and Taxpayer of the State of West Virginia
v.
The LEGISLATURE OF the STATE OF WEST VIRGINIA; Robert C. Chambers, as Speaker of the House of Delegates, etc.; Dan Tonkovich, as President of the Senate, etc.; and Arch A. Moore, Jr., Governor of the State of West Virginia.
No. 17950.
Supreme Court of Appeals of West Virginia.
February 23, 1988.
Dissenting Opinion March 7, 1988.
Rehearing Filed April 25, 1988.
Refused May 18, 1988.
William B. McGinley, W.V.E.A., Charleston, for WVEA etc. Thomas J. Vogel.
Charles G. Brown, Atty. Gen., Silas B. Taylor, Deputy Atty. Gen., J. Bradley Russell, Asst. Atty. Gen., for Leg. Chambers & Tonkovich.
Marianne K. Stonestreet, Deputy Atty. Gen., Paul Richard Hull, Sr., Asst. Atty. Gen., Charleston, for Governor.
McGRAW, Justice:
In this mandamus proceeding, the West Virginia Education Association (WVEA) challenges as unconstitutional the cuts in state expenditures for education made in the fiscal year 1987-88 state budget. The WVEA seeks writs of mandamus requiring the Governor to call a special session of the Legislature and requiring the Legislature to supplement the budgetary appropriation for education, or such other relief as this Court deems appropriate. Having considered the arguments of the parties, we conclude that the fiscal year 1987-88 state budget is unconstitutional. As an act of comity, we presume the Governor and Legislature will do their duties. Therefore, the writ prayed for is deferred.
The petitioners are correct in their representation that the provisions of Article XII, Section 1 et seq. and Article X, *455 Section 5 of the West Virginia Constitution, give a constitutionally preferred status to public education in this State. Syl.Pt. 1, State ex rel. Board of Education v. Rockefeller, 167 W.Va. 72, 281 S.E.2d 131 (1981). We have also held that the mandate of article twelve, section one that the Legislature provide for a thorough and efficient public school system requires that body to develop high standards for educational quality statewide. Pauley v. Kelly, 162 W.Va. 672, 255 S.E.2d 859 (1979). Further, we have disapproved of reducing state expenditures for public education as part of a pro rata reduction in the overall budget due to an anticipated revenue shortfall. Board v. Rockefeller, 167 W.Va. 72, 281 S.E.2d 131. Indeed, in this commonwealth, education is an essential constitutional right. The financing of education is, among mandated public services, the first constitutional priority. Cooper v. Gwinn, ___ W.Va. ___, 298 S.E.2d 781 (1981); see Board v. Rockefeller, 167 W.Va. 72, 281 S.E.2d 131.
This case vividly illustrates the concept of "rule of law". Rule of law implies subordination of the three branches of government (legislative, executive, and judicial) to principles of law enunciated in the constitution. The thorough and efficient system of free schools required by our constitutional law is to be provided for through enactment of general law by the Legislature. W.Va. Const. art. XII, § 1. Article nine A of chapter eighteen of the West Virginia Code sets forth a comprehensive plan for financial support of public schools. State ex rel. Raese v. Battle, 149 W.Va. 761, 143 S.E.2d 328 (1965), overruled on other grounds, Pauley v. Kelly, 162 W.Va. 672, 255 S.E.2d 859. As such, Code § 18-9A-1 to -22 is an integral part of the fundamental constitutional command that the Legislature provide for a thorough and efficient system of public education.[1] The Legislature, in enacting and specifying the basic foundation program contained in article nine A has established public policy which is presumed to vindicate the constitution. That body has made a determination that presumes this basic foundation program is a necessary part of fulfilling the constitutional obligation.
Consistent with the assertion of the petitioners, the respondent Governor admits "that the appropriations made by the Legislature for public education are incorrect." The Legislative respondents verify that the current budget, as approved by two-thirds of the members of each house of the Legislature, fails to appropriate sufficient dollars to fund the basic foundation program.
Thus, the petitioners are correct in their premise that the fiscal year 1987-88 budget does not comport with the legislatively established public policy, which is presumed to vindicate the constitutional mandate for a thorough and efficient public school system.[2]
The Governor, by answer, claims and avers, "The Legislature by appropriating $1,490,215,893.00, an amount which exceeds *456 the ... revenue estimate[3] by $25,815,893.00, has created an unconstitutional budget." He further avers, "The Budget Bill enacted by the Legislature creates a deficit and is seriously out-of-balance." The respondent Speaker and President do not controvert the Governor's verification.
It is clear that the Governor and the Legislature have the responsibility for preparing and enacting a proper budget bill in accordance with Article VI, § 51 of the West Virginia Constitution. See generally, State ex rel. Moore v. Blankenship, 158 W.Va. 939, 217 S.E.2d 232 (1975); State ex rel. Brotherton v. Blankenship, 158 W.Va. 390, 214 S.E.2d 467 (1975); State ex rel. Brotherton v. Blankenship, 157 W.Va. 100, 207 S.E.2d 421 (1973). Provisions contained in article six, section fifty-one of the Constitution of West Virginia require that the estimate of revenues and the budgeted appropriations be in balance so as not to create a deficit.
Thus, we hold the budget for fiscal 1987-88 to be unconstitutional under Article VI, § 51 of the West Virginia Constitution.
While we have determined that the budget is unconstitutional,[4] as an act of comity, we decline today to issue extraordinary writs prayed for by WVEA. Comity is "mutual consideration between ... equals." Webster's Third New International Dictionary 455 (1970). Comity, as a principle of law, is a courtesy extended in deference from equals who are mindful of their duty to equals who are mindful of their duty. See W. Anderson, A Dictionary of Law 197 (1890). Because the concept of comity is based in mutual deference accorded to equals, it is applicable among co-equal departments (branches) of a single sovereign government.
We do not today order the Governor to do any act. We do not today order the Legislature to do any act. The law presumes the Governor to know his duty when faced with an unconstitutional budget.[5] The law presumes the Legislature to know its duty[6] too.[7]
BROTHERTON and NEELY, JJ., dissent and reserve the right to file dissenting opinions.
BROTHERTON, Justice, dissenting:
I dissent to the majority opinion in this mandamus action because the ruling is based on an issue not properly before the Court. The petitioners asserted that they *457 were aggrieved by the amount provided for public education in the budget that went into effect July 1, 1987. They asked this Court to compel the Governor to reconvene the Legislature in special session and provide a revised revenue estimate, and to order the Legislature to pass supplemental appropriations bills restoring funds provided for public education in the budget vetoed by the Governor on March 31, 1987. The petitioners, however, did not allege that the State budget for the year 1987-88 was unconstitutional or pray that it be declared unconstitutional. The only issues, therefore, before this Court were (1) whether the Governor had a duty to reconvene the Legislature to revise the budget (and whether the Legislature had a duty to do so); (2) whether the WVEA had a right to such relief; and (3) whether any other adequate remedy existed.[1] Yet, ignoring both the grievance alleged and the relief requested by the petitioners, the majority declared: "[W]e hold the budget for fiscal 1987-88 to be unconstitutional under Article VI, § 51 of the West Virginia Constitution."
The only "hint" of any question concerning the constitutionality of the 1987-88 budget of the West Virginia Legislature was in the Governor's response to the WVEA's petition. The Governor, in his response, pointed to the fact that the budget appropriations exceeded the revised revenue estimate he submitted to the Legislature on April 6, 1987. The majority opinion states that the respondent Speaker and President did not controvert the Governor's verification that the Legislature appropriated more money than was contained in one of his many estimates, thereby creating an unconstitutional budget. Certainly it was uncontroverted, because it was mentioned only in the answer of a co-respondent. Moreover, this being a proceeding to compel a public official to discharge a legal duty, the constitutionality of the budget was not relevant. Even the Governor, after noting that the budget was out of balance, made clear that he was not requesting any action from this Court with respect to that issue:
At this time, the cost of convening an extraordinary session of the Legislature far exceeds any benefits which might be derived from said session. The Legislature was in session virtually from January to June, 1987. During that time, it made no progress towards adequate funding of education, thereby, leaving the Governor no reason to believe another special session would help.
.....
Respondent Moore avers that the appropriations made by the Legislature for public education are incorrect and substantially lower than his recommendations. However, considering the cost of a special session and the fact that the Legislature will regularly convene in January, 1988, respondent Moore avers that the problems raised by the petitioners can best be resolved during the regular session of the Legislature.
Answer, ¶ ¶ 20 & 24. Similarly, the constitutionality of the budget was not even mentioned in the Governor's Memorandum of Law filed in this case.
It is hard to understand why a chief executive in a responsive pleading would even raise the question of the constitutionality *458 of the budget three months after it had taken effect and some four-and-one-half months after the Legislature overrode his veto of the budget. The Governor's concern for the budget's constitutionality was not so overwhelming as to discourage his authorizing the spending of the money.
The majority opinion reviews this Court's position regarding the constitutional priority of education in this State by citing various decisions of this Court over the past five years. On page 455 of the majority opinion it states: "Indeed, in this commonwealth, education is an essential constitutional right. The financing of education is, among mandated public services, the first constitutional priority." Yet, after saying all of that, the majority opinion did nothing to effectuate any plan to make that a fact. It is the long-standing practice of this Court in a mandamus proceeding to set forth in detail the measures to be undertaken by the respondents to bring about relief granted. See, e.g., Allen v. State Human Rights Comm'n, ___ W.Va. ___, 324 S.E.2d 99, 127 (1984); United Mine Workers of America v. Scott, ___ W.Va. ___, 315 S.E.2d 614, 633 (1984), United Mine Workers of America v. Miller, ___ W.Va. ___, 291 S.E.2d 673, 684 (1982). However, rather than guiding the respondents as to how to remedy the unconstitutionality of the budget, the majority merely states: "We do not today order the Governor to do any act. We do not today order the Legislature to do any act. The law presumes the Governor to know his duty when faced with an unconstitutional budget. The law presumes the Legislature to know its duty too." (footnotes omitted). Because the majority opinion fails to order the Governor or the Legislature to take any action, the opinion serves no purpose and corrects no wrongs.
No action is prescribed, because this Court has adopted a new principle of law, the doctrine of comity, which is totally foreign to this writer as applied by the majority to the three branches of government in this State.[2] The majority defines comity as "a courtesy extended in deference from equals who are mindful of their duty to equals who are mindful of their duty." I assume that the majority is adopting the doctrine of comity as a principle of law to be used by this Court in the future when petitions are filed by one branch of government seeking redress for inaction or improper action on the part of the other two branches of government. Under the doctrine of comity as articulated by the majority, this Court should issue opinions which, in deference to the other two branches of government, require no action by the respondent branch of government. I doubt that this is the intent of the majority, and will wait to see if the doctrine of comity applies in an action brought by a different petitioner and in a year that is not divisible by twelve.
Finally, with regard to the majority's failure to prescribe a course of action to remedy the budget, this writer notes that this petition was filed in September, 1987, and briefed and argued in the first part of October, 1987. At that time, one fourth of the 1987-88 fiscal year had elapsed. A decision was not handed down until the last part of February, 1988, which was eight months into the fiscal year. The judgment of the unconstitutionality of the budget would not take effect for another sixty-day period in the event a petition for rehearing is filed. If such a petition is filed near the end of that sixty-day period, ten months of the fiscal year will have expired. By the time the case is heard again and a change in the majority opinion, if warranted, is issued, another month, or a total of eleven twelfths of the fiscal year will have expired, and little or no money will be available to rearrange the budget for the year 1987-88 because eleven twelfths of it will have been spent. Therefore, no benefit can possibly inure to education for the year 1987-88.
*459 The majority opinion reads as if its purpose were to make educators believe that this Court embraces education as an essential constitutional right, and believes financing education is among the mandated public services entitled to constitutional priority. This much may be true. It also reads, however, as if it were improving the budget appropriation for education. In fact, the majority opinion is like fool's goldall glitter and no money in the bank. It gives a false sense of security, like a town crier shouting, "Educators sleep soundly. The 1987-88 budget of this State is invalid and ye shall reap great bounty therefrom. All is well." But when morning comes the educators will awake to find that eleven twelfths of the fiscal year has passed. Alas, they will realize that the carriage which carried them to the great ball has turned into a pumpkin.
Because the constitutionality of the budget was not raised by the petitioners, this Court should not have addressed it. Further, because the petition did not allege facts warranting the issuance of a writ of mandamus, the Court should have declined to resolve the issue and dismissed the petition. Instead of dismissing the petition, the majority extrapolates from the petition and response a hybrid allegation on which relief was not sought, and thereby creates a sensation by issuing an opinion not based on logic or sound principles of law.
It is unfortunate that this Court at times sees fit to issue opinions which, in fact, are more appropriately characterized "position papers," which merely reflect the mind set of the majority but have little or no relation to the facts set forth in the case before the Court.
For these reasons, I dissent.
I am authorized to state that Justice NEELY joins in this dissent.
NOTES
[1] The legislative respondents are correct in citing State ex rel. Trent v. Sims, 138 W.Va. 244, 77 S.E.2d 122 (1953) for the proposition that the "thorough and efficient" clause contained in article twelve, section one of the West Virginia Constitution is not a self-executing appropriations provision. The respondents, however, are wrong when they argue that article nine A of Chapter eighteen of the Code does not mandate a specific level of support for free schools in our state. Indeed, "[t]he intent of this article is to provide a plan of financial support to the public schools ... and to fix statutorily both state and county responsibility for financing of the same." W.Va.Code § 18-9A-1 (1984 Replacement Vol.). Although article twelve, section one is not a self-executing appropriations provision, the enabling legislation enacted pursuant to the constitutional mandate does specify the method of providing funding support for the public schools.
[2] This is not to say that the Legislature must forever fully fund the public school support plan as it now stands on the statute books. That body is free to amend the plan, or to replace it with another provision, so long as any new statute meets constitutional muster as set out in article twelve, section one, article ten, section five, and our cases interpreting these provisions. What the Legislature is not free to do, however, is cut education funding pro rata along with constitutionally nonpreferred expenditures in violation of its own previously determined constitutionally based public policy.
[3] We do not here consider the procedure which yielded "revised" revenue estimates.
[4] Because of the nature of this case and our adversarial system of justice, we have confined ourselves to examining only that portion of the budget impacting the public school support plan. Nevertheless, in spite of the savings clause contained in article six, section fifty-one of our constitution, we must declare the entire budget unconstitutional. "If the elimination of the unconstitutional parts of an act of the Legislature would result in an act other and different from that which the Legislature intended to enact, a saving clause will not operate to save the remaining parts of the act." Syl.Pt. 20, Trent v. Sims, 138 W.Va. 244, 77 S.E.2d 122.
[5] The Governor is required to make an oath by art. IV, § 5 of the Constitution of West Virginia:

§ 5. [T]hat he will support the Constitution of the United States and the Constitution of this State, and that he will faithfully discharge the duties of his said office to the best of his skill and judgment....
[6] Article VI, § 16 of the Constitution of West Virginia provides, in pertinent part:

§ 16. Members of the legislature, before they enter upon their duties, shall take and subscribe the following oath or affirmation: "I do solemnly swear (or affirm) that I will support the Constitution of the United States, and the Constitution of the State of West Virginia, and faithfully discharge the duties of Senator (or Delegate) according to the best of my ability;" and they shall also take this further oath, to wit: "I will not accept or receive, directly or indirectly, any money or other valuable thing, from any corporation, company, or person, for any vote or influence I may give or withhold, as Senator (or Delegate) on any bill, resolution or appropriation, or for any act I may do or perform as Senator (or Delegate)."
[7] In order that the respondents may give a thorough consideration to the efficacy of a petition for rehearing, it is ordered that the operation of the final judgment herein be suspended for a period of sixty days from the date of judgment, and that with a petition for rehearing filed in the office of the Clerk of this Court within said sixty days, the operation of the final judgment is hereby suspended until the further Order of the Court. See R.App.P.W.Va.Sup.Ct.App. 24.
[1] This Court has held repeatedly that "[a] writ of mandamus will not issue unless three elements coexist: (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969); see also syllabus, Meade v. Mingo County Bd. of Educ., ___ W.Va. ___, 356 S.E.2d 479 (1987); syl. pt. 1, Graf v. Frame, ___ W.Va. ___, 352 S.E.2d 31 (1986).

With respect to the issue presented, "Mandamus lies to require the discharge by a public officer of a nondiscretionary duty." Syl. pt. 3, State ex rel. Greenbrier County Airport Authority v. Hanna, 151 W.Va. 479, 153 S.E.2d 284 (1967). Although the majority successfully skirted this issue, it appears clear that calling a special session of the Legislature is within the sole discretion of the Governor. W.Va. Const. art. VI, § 19, art. VII, § 7. Similarly, revision of the budget is within the discretion of the members of the West Virginia Legislature. W.Va. Const. art. VI, § 51. See, e.g., State ex rel. Trent v. Sims, 138 W.Va. 244, 77 S.E.2d 122 (1953). It is not within the power of this Court to order either or both of such actions.
[2] A more appropriate doctrine would have been the doctrine of separation of powers, embodied in W.Va. Const. art. V, § 1:

The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others....