376 S.E.2d 839

The WEST VIRGINIA BOARD OF EDU-CATION, a Statutory Corporation and Tom McNeel, State Superintendent of Schools

v.

Ken HECHLER, Secretary of State.

No. 18708.

Supreme Court of Appeals
of West Virginia.

Dec. 21, 1988.

Charles G. Brown, Atty. Gen., J. Bradley Russell, Sr. Asst. Atty. Gen., Beth Hunter, Asst. Atty. Gen., for Tom McNeel.

William B. McGinley, Charleston, for West Virginia Bd. of Educ.

Stephen Herndon, Charleston, for Ken Hechler.

McHUGH, Chief Justice:

In this original proceeding, the petitioners, the West Virginia Board of Education (hereinafter the "Board") and Tom McNeel, State Superintendent of Schools, seek a writ of mandamus directing the respondent, Ken Hechler, Secretary of State, to file rules approved by the Board. This Court has reviewed the petition, the response, and all arguments and exhibits attached thereto.[1] We are of the opinion that the relief requested by the petitioners should be granted.

I

In June, 1988, the West Virginia legislature amended the State Administrative Procedures Act, *W. Va. Code*, 29A–1–1 to 29A–7–4, as amended, by adding to it a new article, namely, article 3A. The new article, *inter alia*, establishes a "legislative oversight commission on education accountability." The oversight commission is to be comprised of eight members: three from the House of Delegates; three from the Senate; and the Speaker of the House and Senate President as *ex officio*, nonvoting members.

Pursuant to the provisions of this new article, the Board must submit its approved

---

1. This Court has also reviewed: the *amicus curiae* brief on behalf of the respondent, filed by the West Virginia Education Association; the *amici curiae* brief on behalf of the petitioners, filed by the West Virginia Congress of Parents and Teachers, the West Virginia Association of School Administrators, the West Virginia Secondary School Principals Commission, the West Virginia School Boards Association, the West Virginia Council of Vocational Administrators, the West Virginia Association of Leaders of Federal Education Programs, the West Virginia Association of Elementary School Principals, the West Virginia School Personnel Association, the West Virginia Association of School Business Officials, and the West Virginia Council of Administrators of Special Education; and the affidavit of Tom McNeel, State Superintendent of Schools and a petitioner in this proceeding, concerning dissemination of proposed policies of the State Board of Education for public comment prior to adoption.

legislative rules to the oversight commission for review. After review of a rule approved by the Board, the oversight commission is required to recommend that the legislature either promulgate the rule in whole or in part, or recommend that the rule be withdrawn. If the legislature fails to act on a rule submitted to it by the oversight commission, then the Board is prohibited from taking any action on the rule "unless and until otherwise authorized to do so." *W.Va.Code,* 29A–3A–13(b) [1988].

In August, 1988, the Board adopted a rule entitled "West Virginia Minimum Requirements for Design and Equipment of School Buses," to be effective October 22, 1988. The rule was filed with the respondent Secretary of State in order to be placed in the West Virginia State Register. The respondent, however, refused to file the rule, basing his refusal on the Board's failure to comply with the newly enacted provisions of the Administrative Procedures Act.

The petitioners seek a writ of mandamus compelling the respondent, the Secretary of State, to file rules approved by the Board in the state register. The petitioners also request that this Court declare portions of the newly enacted Administrative Procedures Act unconstitutional, namely, *W.Va. Code,* 29A–3A–12 and –13 [1988].[2] This Court issued a rule, directed against the

respondent, to show cause why a writ of mandamus should not be awarded against him in this proceeding.

## II

■ We begin by discussing the constitutionally preferred status of public education in West Virginia. "The provisions of Article XII, Section 1, *et seq.,* as well as Article X, Section 5 of the West Virginia Constitution, when construed in light of our prior cases, gives a constitutionally preferred status to public education in this State." Syl. pt. 1, *State ex rel. Board of Education v. Rockefeller,* 167 W.Va. 72, 281 S.E.2d 131 (1981).

Article XII, § 1 of the *West Virginia Constitution* states: "The legislature shall provide, by general law, for a thorough and efficient system of free schools." Article XII, § 2 of the State *Constitution,* however, provides in pertinent part: "The general supervision of the free schools of the State shall be vested in the West Virginia board of education which shall perform such duties as may be prescribed by law." The petitioners contend that this general supervisory provision implies rule-making power, and by enacting *W.Va.Code,* 29A–3A–12 and –13 [1988], the legislature has effectively diminished article XII, § 2 of the State *Constitution.*[3] The Board's rule-making power is viewed by the respondent

**2.** The full text of these newly enacted *Code* sections is too voluminous for reprint in this opinion.

*W.Va.Code,* 29A–3A–12 [1988], in effect, requires that the Board file its approved rules and information pertaining thereto with the legislative oversight commission on education accountability. After review, which may include public hearings, the oversight commission is required to either recommend that the legislature authorize the Board to promulgate the rule in whole or in part, or recommend that the rule be withdrawn.

*W.Va.Code,* 29A–3A–13 [1988], in effect, outlines the procedures by which Board rules are submitted to the legislature by the oversight commission. If the legislature fails to act on a submitted rule, the Board may not take any action on it "unless and until otherwise authorized to do so." *See infra* note 3.

**3.** The petitioners also contend that the newly enacted provision of *W.Va.Code,* 29A–3A–13(b) [1988] amounts to a "pocket veto" of Board

rules because this subsection prohibits the Board from taking any action on a submitted rule until the legislature acts on it. Obviously, if the legislature fails to act on a submitted rule, the effect on the rule is tantamount to a veto by the legislature. The United States Supreme Court addressed the "legislative veto" in *Immigration & Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), holding that the Congress must abide by the authority it has delegated to the Attorney General to suspend deportation of a particular alien until the delegation is altered or revoked by legislative action. *Id.* at 955, 103 S.Ct. at 2786, 77 L.Ed.2d at 347. We need not address this contention, however, because the administrative authority at issue in *Chadha* emanated from a *legislative* delegation. In the case now before us, we are holding that the Board's rule-making authority is *constitutional.*

as being derived primarily from *W. Va. Code*, 18–2–5 [1983], which states in part:

Subject to and in conformity with the constitution and laws of this State, the state board of education shall determine the educational policies of the State and shall make rules for carrying into effect the laws and policies of the State relating to education, including rules relating to the physical welfare of pupils, the education of feeble-minded and physically disabled or crippled children of school age, school attendance, evening and continuation or part-time day schools, school extension work, the classification of schools, the issuing of certificates upon credentials, the distribution and care of free textbooks by the county boards of education, the general powers and duties of county boards of education, and of teachers, principals, supervisors and superintendents, and such other matters pertaining to the public schools of the State as may seem to the state board to be necessary and expedient.

*See Pauley v. Bailey*, 174 W.Va. 167, 173, 324 S.E.2d 128, 133–34 (1984); *Detch v. Board of Education*, 145 W.Va. 722, 724, 117 S.E.2d 138, 140 (1960); *State ex rel. Board of Governors v. Sims*, 133 W.Va. 239, 250, 55 S.E.2d 505, 511 (1949). Referring to this statutory provision, this Court has stated that "[a]lthough this grant of rule-making authority is tempered by a re-

quirement that it be exercised in conformance with other statutory provisions, it is indicative of the broad power of the State Board of Education over county boards of education, particularly in the area of state educational policy." *Bailey v. Truby*, 174 W.Va. 8, 17, 321 S.E.2d 302, 311–12 (1984).

The Board has traditionally been exempt from legislative rule-making review pursuant to *W. Va. Code*, 29A–1–3 [1986].[4] The legislature, however, amended this provision in 1988 by removing the Board's exemption, thus allowing enactment of *W. Va. Code*, 29A–3A–12 and –13, requiring the Board to submit its legislative rules to the legislature for approval.

In accordance with *W. Va. Code*, 18–2–5 [1983], the Board adopted a rule governing the design and operation of school buses. This rule is clearly within the purview of "general supervision" of state schools pursuant to art. XII, § 2 of the *West Virginia Constitution*.[5] In *Bailey v. Truby*, 174 W.Va. 8, 321 S.E.2d 302 (1984), we concluded that "any statutory provision that interferes with the State Board of Education's 'general supervision of the free schools of the State' under article XII, § 2 of the West Virginia Constitution is void." *Id.* 174 W.Va. at 18, 321 S.E.2d at 312. Rules proposed by the Board, like the rule in this case, are integral to the day-to-day operation of schools. An attempt to impede this

---

4. *W. Va. Code*, 29A–1–3(b) [1986] provided:

Except as to requirements for filing in the state register, and with the Legislature or its rule-making review committee, provided in this chapter or other law, the provisions of this chapter do not apply in any respect whatever to the West Virginia board of probation and parole, the public service commission, the board of public works sitting as such, *the West Virginia board of education* and the West Virginia board of regents: Provided, That rules of such agencies shall be filed in the state register in the form prescribed by this chapter and be effective no sooner than sixty consecutive days after being so filed: Provided, however, That the rules promulgated by the state colleges and universities shall only be filed with the West Virginia board of regents: Provided further, That such agencies may promulgate emergency rules in conformity with section fifteen [§ 29A–3–15], article three of this chapter.

(emphasis supplied) The 1988 amendment to this section deleted "the West Virginia board of education."

5. The Board's authorization to adopt and enforce rules governing the design and operation of school buses is also consistent with *W. Va. Code*, 17C–14–12 [1951], which provides in part:

(a) The West Virginia board of education by and with the advice of the motor vehicle commissioner shall adopt and enforce regulations not inconsistent with this chapter to govern the design and operation of all school buses used for the transportation of school children when owned and operated by any county board of education in this State and such regulations shall by reference be made a part of any such contract with a county board of education. Every county board of education, its officers and employees, and every person employed under contract by a county board of education shall be subject to said regulations.

process is not consistent with the general supervisory powers conferred upon the Board by art. XII, § 2 of the State *Constitution.* It is not uncommon for a state board of education to govern these day-to-day operations of schools. "Since state legislators themselves cannot possibly assume actual supervisory responsibility for public schools, the general supervision and administrative control over a state's public school system is generally placed in the hands of a state board of education." H. Hudgins & R. Vacca, *Law and Education* § 1.5, at 17–18 (2d ed. 1985). *See also* J. Rapp, 1 *Education Law* § 3.02[4][c] (1984).

"General supervision" is not an axiomatic blend of words designed to fill the pages of our State *Constitution,* but it is a meaningful concept to the governance of schools and education in this state. Decisions that pertain to education must be faced by those who possess expertise in the educational area. These issues are critical to the progress of schools in this state, and, ultimately, the welfare of its citizens. In 1957, the citizens of this state conferred general supervisory powers over education and one need not look further than art. XII, § 2 of the State *Constitution* to see that the "general supervision" of state schools is vested in the State Board of Education.[6] Unlike most other administrative agencies which are constituents of the executive branch, the Board enjoys a special standing because such a constitutional provision exists.

The rule-making power prescribed by *W.Va.Code,* 18–2–5 [1983] is a provision that has aided the Board's general supervisory functions. The newly enacted provisions of the State Administrative Procedures Act, however, namely, *W.Va.Code,* 29A–3A–12 and –13 [1988], pose an interference with the Board's rule-making power, and consequently, the Board's general supervisory functions.

Therefore, we hold that rule-making by the State Board of Education is within the meaning of "general supervision" of state schools pursuant to art. XII, § 2 of the *West Virginia Constitution,* and any statutory provision that interferes with such rule-making is unconstitutional. Consequently, *W.Va.Code,* 29A–3A–12 and –13 [1988] are hereby declared to be unconstitutional.[7]

Article XII, § 1 of the State *Constitution,* granting the legislature the authority to establish "a thorough and efficient system of free schools," does not entail the exclusive delegation of rule-making functions that are part of the Board's general supervisory powers pursuant to art. XII, § 2. An attempt to undertake the Board's

---

**6.** It is noteworthy that in conjunction with the newly enacted provisions of the State Administrative Procedures Act, the legislature amended *W.Va.Code,* 18–2–5a [1988], which requires the Board to file rules with the legislature. That provision now states:

> The state board of education shall file a copy of any rule that it proposes to promulgate, adopt, amend or repeal *under the authority of the constitution* or of this chapter with the legislative oversight commission on education accountability created pursuant to section eleven [§ 29A–3A–11], article three-a, chapter twenty-nine-a. 'Rule,' as used herein, means a regulation, standard, statement of policy, or interpretation of general application and future effect.

(emphasis supplied) Ironically, the constitutional authority of the Board with regard to rule-making continues to be recognized, despite the creation of the legislative oversight commission on education accountability.

**7.** The petitioners point out that because the legislature only meets sixty days per year, the Board has no way of effecting necessary rules when the legislature is not in session. The respondent rebuts this contention by placing weight on the fact that the legislature also enacted *W.Va.Code,* 29A–3A–16 [1988], which provides for the promulgation and filing of emergency rules. We do not address this point, however, in light of our decision in this case.

We also note that this case is to be distinguished from *Chico Dairy Co. v. West Virginia Human Rights Commission,* 181 W.Va. 238, 382 S.E.2d 75 (1988). In that case, we held that the administrative agency, the West Virginia Human Rights Commission, derived its rule-making powers from a *statute,* specifically, *W.Va. Code,* 5–11–8(h) [1981], and not from the State *Constitution.* Here, in contrast, we hold that the administrative agency, the State Board of Education, is granted general supervisory powers over state educational matters by the State *Constitution.* In this case, we are invalidating legislative provisions that interfere with the Board's exercise of general supervisory powers.

general supervisory powers violates the provision of art. V, § 1 of the State *Constitution* which states: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" Hence, such an attempt is unconstitutional.

■ Consistent with the foregoing, a rule adopted by the State Board of Education, setting forth minimum requirements for the design and equipment of school buses, is within the meaning of "general supervision" of state schools pursuant to art. XII, § 2 of the *West Virginia Constitution.* *W.Va.Code,* 29A–3A–12 and –13 [1988] interfere with such "general supervision," and, therefore, are unconstitutional.

### III

The respondent maintains that the newly enacted provisions at issue in this case meet the standards for legislative review of administrative rules that we set out in *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981). However, in light of our holding that the Board's rule-making authority is *constitutional, Barker* has no application to the case now before us because *Barker* involved administrative rules promulgated pursuant to a *legislative* delegation of rule-making power. *See also supra* note 3.

### IV

■ We now turn to the issue of whether mandamus is a proper remedy in this case. The respondent correctly points out that "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

We need not decide, however, whether these three elements coexist in the case now before us, because the petitioners are challenging the constitutionality of *W. Va. Code,* 29A–3A–12 and –13 [1988]. It has been established that "mandamus may be used to attack the constitutionality or validity of a statute or ordinance." *West Virginia Citizens Action Group, Inc. v. Daley,* 174 W.Va. 299, 302, 324 S.E.2d 713, 717 (1984) (and authorities cited therein).

Therefore, mandamus is clearly a proper remedy in this case.

### V

For the foregoing reasons, the petitioners' request for a writ of mandamus is granted. The respondent is hereby compelled to file rules approved by the State Board of Education in the state register.

WRIT GRANTED.