452 S.E.2d 733

**STATE of West Virginia ex rel. WEST VIRGINIA BOARD OF EDUCATION, A Public Corporation, Relators,**

v.

**Glen B. GAINER III, State Auditor, and Larrie Bailey, State Treasurer, In Their Official Capacities, Respondents.**

No. 22549.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 29, 1994.

Decided Dec. 21, 1994.

---

1. MOCC was dedicated on December 12, 1994.

Victor A. Barone, Charleston, for relators.

Darrell V. McGraw, Jr., Atty. Gen., Silas B. Taylor, Sr. Deputy Atty. Gen., Charleston, for respondents.

CLECKLEY, Justice:

In 1989, pursuant to its constitutional duty and authority, the West Virginia Board of Education (State Board) selected Henry R. Marockie, Ed.D., as State Superintendent of Schools, to serve at the will and pleasure of the State Board. Dr. Marockie took office July 1, 1989.

In the same year, at its regular session, the West Virginia Legislature amended and reenacted W.Va.Code, 6–7–2a (1989), which sets the salaries of numerous executive officers. Among other things, the 1989 Act added the Office of State Superintendent of Schools to the list of officers included in that section and set the State Superintendent's salary at $70,000 per year. That figure has remained unchanged; however, at the 1994 regular session, the Legislature increased the State Superintendent's salary to $75,000 a year, but allowed this increase to take effect only on January 1, 1997.

At its regular monthly meeting on August 12, 1994, the State Board voted to increase the salary of the State Superintendent to $85,000 per year, effective immediately. In this mandamus action, the State Board contends that under its constitutional authority generally to supervise public education, it—not the Legislature—is entitled to fix the salary of its appointee, the State Superintendent. The State Board asserts in this action, therefore, that the Legislature's attempt to set the salary of the State Superintendent in

W.Va.Code, 6–7–2a, is unconstitutional. In order to test its position in this regard, the State Board caused the necessary papers for implementation of the salary increase to be submitted to the budget division of the Department of Administration and to the State Auditor. The budget division approved the increase, but the State Auditor rejected it. The action now before us, then, is to compel the State Auditor and Treasurer to implement the increase.

I.

For the nineteen years immediately before 1989, the State Board set the salary of the State Superintendent pursuant to W.Va. Code, 18–3–1 (1970). The State Board asserts that during this period, the three immediate predecessors of the present State Superintendent were paid salaries in excess of $70,000 per year.

The State Board asserts that Section 2 of Article XII of the West Virginia Constitution begins with these words: "The general supervision of the free schools of the State shall be vested in the West Virginia Board of Education[.]" The second paragraph of that section authorizes the State Board to select the State Superintendent who thereafter serves "at its will and pleasure." Significantly, unlike many other appointed executive officials, the selection of the State Superintendent is *not* subject to the advice and consent of the State Senate.

From this somewhat unique constitutional organization, the State Board seeks to lever the State Superintendent out of the class of senior State executive officers whose salaries are set by the Legislature by pointing to our cases that have held that in this State, public education has a constitutionally preferred status. *State ex rel. Bd. of Educ. v. Rockefeller*, 167 W.Va. 72, 281 S.E.2d 131 (1981). The State Board asserts that this preferred status even supersedes the Legislature's appropriation powers in some respects. *West Virginia Educ. Ass'n v. Legislature*, 179 W.Va. 381, 369 S.E.2d 454 (1988).

Indeed, we have consistently affirmed and applied the Constitution's grant of general supervisory authority to the State Board. *West Virginia Bd. of Educ. v. Hechler*, 180

W.Va. 451, 376 S.E.2d 839 (1988); *Bailey v. Truby,* 174 W.Va. 8, 321 S.E.2d 302 (1984).

In this last regard, perhaps the preeminent case is *Hechler, supra,* where the Legislature had attempted to give itself and its "oversight commission" an important role in the State Board's rulemaking process. The statute in question in 1988 required the State Board to submit proposed legislative rules to the oversight commission that would then recommend either that the Legislature promulgate the rules in whole or in part or that the rule be withdrawn. If, however, the Legislature failed to take action on a rule submitted to it by the oversight commission, the State Board could take no action on the rule. Shortly after enacting the statute, the State Board adopted a rule setting forth minimum requirements for the design and equipment of school buses. The State Board refused to file the rule with the oversight commission, instead filing the rule directly with the Secretary of State, who refused to accept it. In the resulting mandamus action, this Court first acknowledged the constitutionally preferred status of public education and then held that rulemaking by the State Board is part of the "general supervision" of free schools and that any statutory provision that interferes with such rulemaking is unconstitutional.

The Court is certainly sympathetic to the State Board's goals in this matter: Obviously, the State Board is concerned that the unreasonably low salary for the State Superintendent (six counties in the State pay their county superintendents more than the State Superintendent is making) would make it difficult to recruit competent and enthusiastic persons to fill an extraordinarily difficult and important job. Indeed, the Court takes notice that the chief executive officers of the two higher education systems, namely the West Virginia University and the Board of State Colleges, make $32,000 a year more than the State Superintendent. Unless one is so entirely cynical as to believe that nothing in education makes any difference and that there is no such thing as competence, this salary disparity obviously casts ridicule and contempt upon the whole public school enterprise.

Nonetheless, the Court holds that Section 2 of Article XII of the West Virginia Constitution empowers the State Board only "in the manner prescribed by law, [to] select the State Superintendent of free schools who shall serve at its will and pleasure." Unfortunately for the mission of free schools, Section 2 of Article XII does not authorize the State Board to set the State Superintendent's salary. Rather, the authority to set the salaries of *all* state officers is vested by Section 8 of Article IV of the Constitution in the Legislature:

> "The legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

Section 2 of Article XII, pertaining to the powers of the State Board, is silent with respect to the compensation of the State Superintendent and, thus, does not represent a "case provided for in this Constitution." Thus, by the plain language of Section 8 of Article IV, the Legislature is vested with the authority to set Dr. Marockie's salary. The respective roles of the State Board and the Legislature are so clearly set forth that no legitimate issue can be raised with respect thereto.

## II.

Notwithstanding the equity issues raised by the State Board that the Court has already indicated are compelling, equity arguments can have nothing to do with the authority of the State Board versus the authority of the Legislature. If the Legislature makes a decision that is unfair or inequitable, recourse must be had to the voting booth and not to self-help. The preferential treatment accorded to education funding by Section 5 of Article X of the Constitution does not alter the constitutional requirements that the Legislature, not the State Board, provide that funding. Furthermore the Thorough and Efficient Clause contained in Section 1 of Article XII of the Constitution does not authorize the State Board to raise the State

Superintendent's salary in order to preserve a thorough and efficient system of schools.[1]

When the Constitution was amended in 1958 to eliminate the elective office of State Superintendent and transform it to an appointed office, the Legislature did not then abdicate its authority to set the State Superintendent's salary.[2] From the time, then, that the State Superintendent became an appointed official in 1958 until 1970, the Legislature set the State Superintendent's salary in the Code section that now appears as W.Va.Code, 18–3–1. Thus, not until 1970 did the Legislature see fit, even temporarily, to delegate the Legislature's constitutional authority to set the State Superintendent's salary. And even when the Code section was amended in 1970 to vest in the State Board the statutory authority to set the State Superintendent's salary, the Legislature was not acting because of any constitutional constraint on its authority. Indeed, if the Legislature had perceived that it were not constitutionally authorized to set the State Superintendent's salary, it would simply have repealed the statutory provision pertaining to the salary of the State Superintendent in order to acknowledge the new constitutional authority of the State Board. Instead, however, it specifically delegated its authority as it continues to do with respect to county superintendents. See W.Va.Code, 18–5–33 (1933). As we often have held, "legislative and contemporaneous constructions [of constitutional provisions] are very persuasive, if not binding." Simms v. County Court, 134 W.Va. 867, 874, 61 S.E.2d 849, 853 (1950).

## III.

The State Board's argument also overlooks the import of the Modern Budget Amendment found in Section 51 of Article VI, which details the procedure and substance of budgetmaking in this State. Section 51 provides that the executive's budget proposal to the Legislature must include salaries to be paid "public officers" and authorizes the Legislature to modify the executive's budget. Both the executive and the legislative branches, however, are specifically precluded from altering the expenses submitted by the judiciary. State ex rel. Bagley v. Blankenship, 161 W.Va. 630, 246 S.E.2d 99 (1978); State ex rel. Brotherton v. Blankenship, 157 W.Va. 100, 207 S.E.2d 421 (1973). There is no similar exception for the State Board. In addition, Section 51 precludes the Legislature from altering salaries of public officials during their terms of office unless such changes elsewhere are authorized by the Constitution. See also W.Va. Const. art. VI, § 38. Although Section 33 of Article VI and Section 7 of Article VIII make exceptions for legislators and judges, respectively, there is no analogous provision for the State Superintendent. Thus, under Section 51, the Legislature's authority over budget allocations is supreme, subject only to possible gubernatorial veto, insulation of the judicial budget from political interference[3], and other specific limitations. The only such limitation relevant here is the requirement in Article XII that the Legislature adequately fund public schools. We do not believe that the State Board has shown that the legislative allocation challenged in this case is constitutionally inadequate.

Accordingly, the writ of mandamus for which the State Board prays is denied.

Writ denied. .

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

NEELY, J., dissents.

---

1. There is, of course, precedent for the proposition that if the Governor or the Legislature were to cut funding to such an extent that a constitutionally mandated function could not be performed, such drastic budget-cutting action would violate the Constitution. See State ex rel. Brotherton v. Blankenship, 157 W.Va. 100, 207 S.E.2d 421 (1973).

2. Before 1958, the State Superintendent was an elected official listed, with all other members of the Board of Public Works, in Article VII of the Constitution. And, like all other members of the Board of Public Works, the authority to set the State Superintendent's salary was vested in the Legislature by Section 19 of Article VII of the Constitution.

3. See State ex rel. Frazier v. Meadows, —— W.Va. ——, ——, 454 S.E.2d 65, —— (1994).

421

NEELY, Justice, dissenting:

I agree with the general reasoning of the majority. Although I believe that *W.Va.Code* 6–7–2a, which sets the salary of the State Superintendent of Schools, is constitutional, I also believe that under the facts of this case it is unconstitutionally applied.

Education is a major American industry as the ingress of students from all over the world to study in our schools, colleges and universities amply demonstrates. Like all major industries, education can be highly competitive, and this is particularly true at the level of senior executives where stress, political pressures and burnout are ever present dangers.

Accordingly, I would grant the writ of mandamus on the grounds that the Legislature has set the salary of the state superintendent so low as to confound the proper functioning of the State Board of Education and thus place in jeopardy our thorough and efficient system of free schools. *State ex rel. Brotherton v. Blankenship,* 157 W.Va. 100, 207 S.E.2d 421 (1973). Although I do not necessarily believe that the state superintendent must be paid exactly $85,000 a year or more, I would order such salary to be placed into effect until such time as the Legislature takes appropriate action to restore an appropriately competitive salary to this important office. Thus, as moulded, I would award the writ.